741 F.2d 306
 Bankr. L. Rep. P 69,989
In re Eugene C. MULLENDORE and Kathleen Boren Mullendore, Debtors.
Kathleen Boren MULLENDORE and Katsy Mullendore Mecom, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 81-1864.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 15, 1984.
 
 Seagal V. Wheatley, San Antonio, Tex., (Edward M. Lavin of Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, Tex., on brief), for appellants.
 Cynthia C. Cummings, Atty., Civ. Div. Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., David Epstein, Atty., Civ. Div., Dept. of Justice, Washington, D.C., on brief), for appellee.
 Before HOLLOWAY, McKAY and SEYMOUR, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 Kathleen Boren Mullendore and Katsy Mullendore Mecom timely appeal an order of the district court affirming an order of the bankruptcy court requiring the debtors in possession to pay into the Treasury of the United States $14,265.02 for the additional fee payable to the Referees' Salary and Expense Fund, Sec. 40(c)(2) of the Bankruptcy Act, 11 U.S.C. Sec. 68(c)(2). We affirm.
 
 
 2
 * On July 17, 1979, the bankruptcy judge authorized the payment of the requested attorney's fees and the closing of the estate. On his own motion the bankruptcy judge on November 7, 1979, ordered that the debtor estate or the debtors pay $22,319.80 to the clerk of the bankruptcy court, for deposit into the United States Treasury to the credit of the referees' salary and expense fund. After a hearing the bankruptcy judge in October 1980 amended his order of November 1979 to reflect that the fee payable by the debtor estate or the debtors was the amount of $14,256.06. The order was appealed from to the district court. II R. 394. The district court in June 1981 found nothing clearly erroneous in the decision of the bankruptcy court and affirmed the bankruptcy court's order. II R. 452-53.
 
 II
 
 3
 The appellants contend that the bankruptcy judge erred in the computations on which the fee was assessed; that the judge erred in presuming that earlier the failure of the district judge to assess the fee was merely an oversight; and that there is no legal or equitable justification for imposing the fee.
 
 
 4
 A bankruptcy estate may be reopened. Title 11 U.S.C. Sec. 11(a)(8) (1976) states that "courts of bankruptcy ... are ... invested ... with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction ... to ... reopen estates for cause shown."[1] This "recognition of the power of the court to reopen estates 'for cause shown' avoids the restrictive application under former Sec. 2(a)(8) to instances where estates were closed before full administration. No attempt is made to define the outer limits of the court's discretion ..." 1 Collier on Bankruptcy p 2.49 (14th ed. 1976). (footnotes omitted). Even though the bankruptcy court has discretion in many instances whether to reopen an estate, it is the duty of the court to reopen an estate whenever prima facie proof is made that it has not been fully administered. In re Joslyn's Estate, 171 F.2d 159, 164 (7th Cir.1948).
 
 
 5
 "Application to have the estate reopened may be made by an 'interested party' who would be benefited by the reopening." Moreover, contrary to appellants' contention that the bankruptcy judge had no authority to reopen the estate and enter the order assessing the fee, "it has been suggested that perhaps the court could make a reopening order sua sponte." 1 Collier on Bankruptcy p 2.50 (14th ed. 1976). (footnotes omitted). In In re Int'l Match Corp., 190 F.2d 458, 460-61 (2d Cir.), cert. denied, 342 U.S. 870, 72 S.Ct. 113, 96 L.Ed. 655 (1951), the court held that where the referee in bankruptcy had taken excess commissions by fraud and in violation of court orders it was proper for the court, on the recommendation of a special master, to reopen the estate and to order the recovery of the sums involved.
 
 
 6
 Here we feel that the estate was reopened within a reasonable time after it was closed; this was done in order to complete properly the administration of the estate.[2] We find the bankruptcy court did not abuse his discretion in reopening the estate sua sponte for the purpose of ordering the debtor estate to pay $22,319.80, later amended to $14,256.06, to the clerk of the bankruptcy court for deposit in the United States Treasury to the credit of the referees' salary and expense fund.[3]
 
 
 7
 Appellants contend that the bankruptcy court erred in presuming that the earlier failure of the district judge to assess the fee was merely an oversight and that there is no legal or equitable justification for imposing the fee. Regardless of the judge's reasons for failing to assess a fee, fees for the referees' salary and expense fund are chargeable against each case in an arrangement confirmed under Chapter 11 of the Bankruptcy Act. Title 11 U.S.C. Sec. 68(c)(2) (1976) states in mandatory terms:
 
 
 8
 Additional fees for the referees' salary and expense fund shall be charged, in accordance with the schedule fixed by the conference ... (b) against each case in an arrangement confirmed under chapter 11 of this title.
 
 
 9
 Appellants say that no services were performed by a referee sufficient to justify an assessment for the referees' salary and expense fund. However, even in those cases administered without a reference to referees, such fees are chargeable. Report of the Judicial Conference of the United States (1948) at p. 31.[4]
 
 
 10
 These fees must be paid in full unless waived. Title 11 U.S.C. Sec. 737 (1976) states that at the creditors' meeting, or at any adjournment thereof, the judge or referee shall, after the acceptance of the arrangement--
 
 
 11
 (2) fix a time within which the debtor shall deposit ... the money necessary to pay all debts which have priority, unless such priority creditors shall have waived their claims on such deposit, or consented in writing to any provision of the arrangement for otherwise dealing with such claims, and the money necessary to pay the costs and expenses of the proceeding.
 
 
 12
 Bankruptcy Rule 11-38(b) (1976) provides that
 
 
 13
 [a]ny person who has waived his right to share in the distribution of the deposit or in payments under the plan shall file with the court, prior to confirmation of the plan, a statement setting forth the waiver and any agreement with respect thereto made with the debtor, his attorney, or any other person.
 
 
 14
 Title 11 U.S.C. Sec. 104(a) (1976) states that
 
 
 15
 [t]he debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; the fees for the referees' salary and expense fund ...
 
 
 16
 "An arrangement ... shall be confirmed by the court when the debtor shall have made the deposit required under this chapter and under the arrangement." 11 U.S.C. Sec. 761 (1976). Here the debtors do not contend that fees for the referees' salary and expense fund were waived by the filing with the court of a statement setting forth the waiver as provided by Bankruptcy Rule 11-38(b), nor do we find evidence of such waiver. We conclude that because these fees were not waived, and no deposit covering this debt which has priority was made, the arrangement should not have been confirmed. The arrangement was nevertheless confirmed. I R. 175-76.
 
 
 17
 Appellants contend that the discharge in bankruptcy released the former debtors in possession from any provable debt owed to the United States.[5] Title 11 U.S.C. Sec. 771 (1976) states:
 
 
 18
 The confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, but excluding such debts as, under section 35 of this title, are not dischargeable.
 
 
 19
 "The term 'unsecured debt' also includes unsecured priority debts." 9 Collier on Bankruptcy p 9.32 (14th ed. 1976). Fees for the referees' salary and expense fund are priority debts, 11 U.S.C. Sec. 104(a) (1976), and were unsecured. However, "[i]n requiring that a debt be 'provided for by the arrangement' in order to be discharged by confirmation, Sec. 371 means that the plan must deal with that debt by providing for the payment of some consideration to the holder of that debt. If a plan does not provide for the payment of some consideration for the modification or alteration of a creditor's rights, the debt owed to that creditor is not affected by the discharge which results from confirmation of the plan." Id. "A plan need not necessarily provide for all debts, and if a debt is not provided for it is not discharged by confirmation of the plan." Id. Appellants admit that the district judge did not assess a fee payable to the referees' salary and expense fund, Brief of Appellants at p. 17, 22-23, and we find that the arrangement did not provide for fees payable to the referees' salary and expense fund; therefore, the fees payable to the fund were not discharged by the confirmation of the arrangement.
 
 
 20
 Appellants contend further that the bankruptcy judge erred in the computations on which the fee was assessed. Title 11 U.S.C. Sec. 68(c)(2)(b) provides that in an arrangement confirmed under chapter 11, the fees for the referees' salary and expense fund shall be "computed upon the amount to be paid to the unsecured creditors upon confirmation of the arrangement..." The Judicial Conference of the United States fixed the following fee schedule:
 
 
 21
 Cases filed on and after July 1, 1970, three percent on the first $100,000 of total obligations paid or extended in Chapter XI cases and one and one-half percent on the balance.
 
 
 22
 2A Collier on Bankruptcy p 40.05[2.1] (14th ed. 1976). It is the duty of the bankrupt to "prepare, make oath to, and file in court ... a schedule of his property, showing the amount and kind of property, the location thereof and its money value, in detail; and a list of all his creditors, including all persons asserting contingent, unliquidated, or disputed claims, ... the amount due to or claimed by each of them, the consideration thereof, the security held by them, if any, and what claims, if any, are contingent, unliquidated or disputed." 11 U.S.C. Sec. 25 (1976). (emphasis added). The schedules which must be filed include Schedule A--Statement of All Debts of Bankrupt, Schedule A-1--Creditors Having Priority, Schedule A-2--Creditors Holding Security and Schedule A-3--Creditors Having Unsecured Claims without Priority. 11 U.S.C. app., form no. 6 (14th ed. 1976).
 
 
 23
 The bankruptcy judge found in his order of October 17, 1980, that the testimony of accountants at the hearing on the objection to the order for the $22,319.80 payment "may be summarized as indicating that, upon subsequent examination of the records, it was the accountants' present opinion that payments made under the plan to unsecured creditors did not exceed $851,004.23." II R. 391. Because it is the debtor's duty in a chapter 11 case to file in court the amount to be paid to unsecured creditors, the appellants cannot complain that the information they provided, and which was relied on by the bankruptcy judge in computing the amount owed to the referees' salary and expense fund, is erroneous.[6] We hold that the bankruptcy judge's finding as to the amount owed to the referees' salary and expense fund is not clearly erroneous.
 
 
 24
 We also feel that this amount was properly assessed against the debtor estate or the debtors. On July 17, 1979, the debtor estate had on deposit in banking institutions not less than $381,000.00. II R. 389. Appellants argue that legal rights have attached to these funds since the closing of the estate. Even though some of these funds may have passed through the will of Kathleen Mullendore's husband to their grandchildren, Kathleen Mullendore, a former debtor in possession, is chargeable with the $14,256.06 owed to the referees' salary and expense fund.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 Bankruptcy Rule 515 (1976) also provides:
 A case may be reopened on application by the bankrupt or other person to administer assets, to accord relief to the bankrupt, or for other good cause. The application shall be filed with the clerk of the district court having custody of the papers in the case. The case shall be referred forthwith for action on the application and for further proceedings therein.
 We note that "in connection with the modification or vacation of orders or decrees, Federal Civil Rule 60(b) is inapplicable in bankruptcy proceedings, as inconsistent therewith." 1 Collier on Bankruptcy p 2.12[2.1] (14th ed. 1976). (footnote omitted).
 Appellants cite In re Barlean, 279 F.Supp. 260 (D.Mont.1968), for the proposition that "cause shown" refers to causes which, if known to the adjudicating authority, would have changed the decision or order. They say that no fact exists in the record to show that if this matter had been considered by the original district judge who handled the case and had since died, a different result would have been reached nor that his failure to require such an additional assessment was mere oversight or omission. The court in In re Barlean stated at p. 261 that "since the referee reached the correct result at the time he acted, and since no cause is now shown which if shown at the time of the closing of the estate would have altered the result, the motion to re-open is denied." In re Barlean is distinguishable from this case. Here the correct result was not reached by the adjudicating authority at the time he acted.
 
 
 [2]
 The estate was closed on July 17, 1979. II R. 352. After the estate was closed, the bankruptcy judge was required to prepare and transmit to the Administrative Office of the United States Courts the closing statistical report in this case--Form BK-78, Report of Bankruptcy Judges in Cases Terminated Under Chapter XI. The bankruptcy judge inquired of the accountants for the bankruptcy estate what payments were made from the estate in order to complete Form BK-78. On review of the information given him he discovered that no charges were made or paid to the credit of the referees' salary and expense fund, information required by Item 11(a) of Form BK-78. II R. 389-90. As a result, on November 7, 1979, the bankruptcy judge in effect reopened the estate and ordered the debtor estate, or the debtors, to deliver to the clerk of the bankruptcy court the sum of $22,319.80 for deposit into the Treasury of the United States to the credit of the referees' salary and expense fund. II R. 353-54
 
 
 [3]
 Because the bankruptcy court opened the estate sua sponte, we need not consider appellants' contention that the United States does not have standing to support the reopening of the closed estate
 
 
 [4]
 Title 11 U.S.C. Sec. 65 (1976) provides that the Judicial Conference of the United States "shall determine ... the number of referees, ... their respective salaries, and schedules of graduated additional fees to be charged in asset, arrangement and wage-earner cases.... The 1948 Report of the Judicial Conference of the United States at p. 31 states:
 Charges in straight Bankruptcy and arrangement cases under Chapter XI administered without reference to Referees.--The Committee recommended the adoption of the following regulation:
 Additional charges for the referees' salary and expense funds promulgated by the Judicial Conference of the United States pursuant to Section 40c(2) of the Bankruptcy Act, as amended, shall be collected for such funds in all straight bankruptcy and arrangement cases under Chapter XI administered before a district court without reference to a referee in bankruptcy.
 It was pointed out that such charges should be made in order that the costs of administration may be uniform and to provide the funds necessary to maintain the referees' salary and expense funds.
 We note that in August 1972 an order was entered by the district judge referring to the referee in bankruptcy the determination of all disputed claims. I.R. 29.
 
 
 [5]
 Contrary to appellee's contention that the issue whether the obligation payable to the United States Treasury was discharged is raised for the first time on appeal, we find that it was raised below. See II R. 424-25
 
 
 [6]
 In his order of November 7, 1979, the bankruptcy judge stated:
 The report of accountants for the debtor estate indicates the total consideration paid under the plan to unsecured creditors to be not less than $1,387,987.00.
 II R. 353. Using this figure the bankruptcy judge determined that the additional fee to be charged was $22,319.80. Id. The debtors objected to the order of the court assessing this additional fee. II R. 355.
 The court held a hearing on the debtors' objection to the assessment of this additional fee. At this hearing Mr. Stewart, accountant for the receivers of the Mullendore bankruptcy estate, was questioned about the amount of unsecured claims and testified as follows:
 Q All right. Let me show you a number that's here, Mr. Stewart, and I would like to ask you about it so that maybe we can clear up the Judge's thoughts on it. Under paragraph 7, titled Debtor's Confirmed Plan for Payment to Unsecured creditors. Do you see that heading?
 A Uh-huh. Yes.
 Q And then there is a total there. It says Total, 7-A and 7-B, and it shows what number there?
 A A million, three eighty-seven, nine eighty-seven.
 Q All right. Now, on the order entered by the Court in this case on November 7, 1979, there was a finding that the report of the accountants, and I assume that would be your firm, the Debtor estate indicates a total consideration paid under the plan to unsecured creditors to be not less than a million, three hundred eighty-seven thousand, nine hundred eighty-seven dollars. Same figures on Exhibit 1.
 A Uh-huh.
 Q Now, did I call your firm and talk to either you or Mr. Chaney and ask you to please try to verify that figure for me?
 A Yes.
 Q And have you, to date, been able to verify the total amount of unsecured creditors in the Mullendore bankruptcy?
 A Not with accuracy, we would like to, because of all the time it would take to check all the claims.
 Q Have you at least made another attempt to try to come up a number?
 A Yes. We went back and reviewed all the checks that were written in this case that we felt like were either secured or unsecured, and we have come up with another number which we feel is more accurate, but still before we would certify it, we would have to do additional work.
 Q So you still have not completed your work to verify the amount of unsecured creditors?
 A That's right.
 Q But at least a preliminary study or search that you have made to date indicates how much as being the figure to date?
 A Yes.
 Q And how much is that?
 A I don't have those figures here.
 Q I have your letter to me if that will refresh your memory.
 A It's $851,004.23.
 Q All right. So to date you have already discovered about half a million dollars less than what was shown on the figures?
 A Yes.
 Q And you haven't completed your research as yet.
 A No.
 Q So if the Court were to enter an order today, Mr. Stewart, you would not be able to give him a number that would be based on a percent of the amount of unsecured creditors claims, would you?
 A No.
 Transcript of Hearing on Objection of Debtors to Order Assessing Fees 21-23.
 We cannot say that the findings and order on the amount payable to the referees' salary and expense fund was in error. Obviously the records and testimony were unclear and the figures are not in a desirable form. Nevertheless the appellants had an opportunity to present evidence as to the correct amount paid to unsecured creditors upon confirmation of the arrangement. We cannot say it was error for the bankruptcy judge to use the $851,004.23 figure as the basis for his calculations. Using that figure the computations were correct to determine that the amount owed to the referees' salary and expense fund was $14,265.06. II R. 392.