**In re Joe Freeman PUGH and Joan Betty Pugh, dba Charleston Marine Construction and general partners in J.J.W.C. Enterprises, a limited partnership, Debtors-in-Possession.**

**In re J.J.W.C. ENTERPRISES, a limited partnership, Debtors-in-Possession.**

**AMERICAN UNIVERSAL INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Joe Freeman PUGH and Joan Betty Pugh, Defendants-Respondents.**

Civ. No. 85–313–RE.

United States District Court,
D. Oregon.

May 7, 1986.

Thomas H. Tongue, Michael J. Francis, Dunn, Carney, Allen, Higgins & Tongue, Portland, Or., for plaintiff-appellant.

Graham M. Hicks, Kevin D. Padrick, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendants-respondents.

## OPINION

REDDEN, District Judge:

This is an appeal from two separate judgments entered by the bankruptcy court. Plaintiff-appellant first challenges the ruling entered by the bankruptcy court on May 10, 1984, denying its request for a jury trial. Plaintiff-appellant also challenges the bankruptcy court's award of attorney's fees to defendants-appellees, the Pughs. I affirm the bankruptcy court's rulings on the jury trial issue and reverse its decision awarding defendants' attorney's fees.

## BACKGROUND

Defendants, the Pughs, filed a voluntary Chapter 11 bankruptcy proceeding on November 2, 1982. At the time of the filing the Pughs were involved in commercial fishing and had several boats which they used in their endeavors. On June 15, 1983, defendants obtained an insurance policy on one of their vessels, the Lady Christine, from plaintiff, American Universal Insurance Co., in the amount of $400,000. On October 17, 1983, the Lady Christine sank twenty miles off the Oregon Coast. Shortly thereafter plaintiff paid the policy limits to defendants in two checks. One check for $240,000 went to a bank holding a preferred ship mortgage on the Lady Christine, the other check for $160,000 went directly to defendants.

After plaintiff had tendered the checks to defendants the skipper of the boat, John Burgess, told the Oregon State Police that he had intentionally sunk the Lady Christine at defendants' urging. A deckhand, Dennis Bailey, corroborated Burgess' story on February 7, 1984. Plaintiffs brought this action in bankruptcy court on February 8, 1984, for fraud and money had and received. Plaintiff later amended its complaint to include a claim for a constructive trust of the funds it advanced under the insurance policy. Plaintiff also sought a preliminary injunction to prevent defendants from using or disposing of the funds it tendered to them.

After a two day hearing, plaintiff's motion for a preliminary injunction was denied on March 1, 1984. On March 7, 1984, plaintiff requested a jury trial. A hearing was held on that issue on March 28, 1984. On April 3, 1984, defendants amended their

answer, without leave of court, to include a counterclaim for attorney's fees. On May 10, 1984, the bankruptcy court denied plaintiff's request for a jury trial. Plaintiff moved for an interlocutory appeal on that issue, but that was denied on July 23, 1984, by the district court.

The case was tried to the court which found in favor of defendants on September 7, 1984. Final judgment was entered on September 13, 1984, and plaintiff filed its notice of appeal the next day. On October 9, 1984, defendants filed a petition for attorney's fees with the bankruptcy court and plaintiff timely objected. A hearing was held on October 29, 1984. The bankruptcy court awarded defendants attorney's fees of over $63,000 in an Opinion and Order issued December 23, 1985. Plaintiff has appealed that Order.

Meanwhile, I issued an Order staying plaintiff's original appeal on May 3, 1985. In that Order I noted that there was a pending state criminal action, the outcome of which could render plaintiff's original appeal moot. I also noted the possibility of this court and the state issuing conflicting rulings in the cases and therefore held that public policy mandated that I stay the appeal pending the resolution of the state court proceeding. That case was dismissed with prejudice by the state court on the grounds of collateral estoppel.

On January 10, 1986, plaintiff moved to consolidate the two appeals and to stay the appeal on the award of attorney's fees until a decision was rendered on its appeal of the bankruptcy court's denial of its jury trial request. On February 3, 1986, I granted plaintiff's motion to consolidate the appeals and denied its motion to stay the one appeal. In that Order I stated that plaintiff was to brief both issues and to submit a brief to the court on February 21, 1986. The Order also set out response and reply dates.

On February 21, 1986, the court received plaintiff's brief on the attorney's fees issue only. Plaintiff relied on its previously submitted brief on the jury trial demand issue. Defendants responded in a likewise manner. I will first address plaintiff's argu-ments regarding their original appeal, the jury demand. I will next consider the attorney's fees question.

*Jury Demand*

■ Plaintiff contends that its demand for a jury trial was controlled by 28 U.S.C. § 1480(a) which stated:

> Except as provided in subsection (b) of this section, this Chapter and Title 11 do not affect any right to trial by jury, in a case under Title 11 or in a proceeding arising under Title 11 or arising in or related to a case under Title 11, that is provided by any statute in effect on September 30, 1979.

Plaintiff argues that this section substantially changed an individual's right to a jury trial in bankruptcy court from the "pre-Code" days. Prior to the enactment of the Bankruptcy Reform Act of 1978 a litigant's right to a jury trial in bankruptcy court depended upon whether the matter was summary or plenary. The matter was considered summary if it involved property that was in actual or constructive possession of the bankruptcy court. There was no right to a jury trial in summary proceedings. A plenary proceeding concerned property that was not in possession of the bankruptcy court and was generally an action brought by the trustee against a third party in state or federal district court. The parties were entitled to a jury in plenary proceedings.

Plaintiff argues that Congress expressly abolished the plenary-summary jurisdictional distinction in the 1978 Act. Plaintiff further argues that although § 1480 does not expressly negate that distinction in regards to entitlement to a trial by jury, such can be implied. Plaintiff urges that I adopt an interpretation of § 1480 that would allow parties in bankruptcy court "the same rights to jury trial as they would have in other federal courts, regardless of how their actions would have been characterized prior to the Code." Appellant's brief (appeal I), page 4. Defendants, on the other hand, urge that I interpret the statute to require that I determine the issue of entitlement to a jury using the old summary-plenary test.

Before I analyze either argument further, I note that 28 U.S.C. § 1480 was repealed, albeit clumsily, by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), Pub.L. No. 98–353, 98 Stat. 333, codified in scattered sections of Titles 11 and 28, United States Code. *First National Bank of Lafayette v. Amco Underwriters of Audubon Insurance Company,* 751 F.2d 806, fn. 1 (5th Cir.1985). Section 1480 was replaced by 28 U.S.C. § 1411.

The language contained in § 1411 is not as broad as § 1480 and appears to significantly limit the availability of jury trials in bankruptcy courts. The problem with which I am faced is, considering contradictory language in §§ 113 and 121(a) of the BAFJA, whether § 1480 ever became effective.

Section 402(b) of the Bankruptcy Reform Act stated that § 1480 (among others) was to become effective June 28, 1984. Section 113 of the BAFJA which was signed into law on July 10, 1984, amended § 402(b) and stated that § 1480 (among others) "shall not be effective." The amendment was to be retroactive to June 27, 1984. Thus § 1480 would never have become effective. However, § 121(a) of the BAJFA stated that § 1480 (and others) was to become effective on the date of the BAFJA, July 10, 1984. Thus, § 1480 either became effective in conjunction with § 1411 on July 10, 1984, or it never became effective.

I find that § 121(a) in regard to § 1480 makes no sense. It is completely illogical to have two sections which govern the right to jury trials in bankruptcy proceedings, particularly when they differ considerably.[1] I necessarily find that § 113 rendered § 1480 as never becoming effective. I therefore do not consider plaintiffs' right to a jury trial pursuant to § 1480. I also do not consider plaintiffs' entitlement to a jury trial under § 1411 as this case was pending on July 10, 1984.

Section 122(b) of BAFJA expressly states that § 1411(a) does not apply to cases that would fall under that provision that were pending on July 10, 1984. Unfortunately, § 122(b) fails to delineate what standard was to be applied to cases pending July 10, 1984, in which a trial by jury was sought.

I find that the entitlement to a jury trial in cases pending on July 10, 1984, was to be determined using the "pre-Code" summary-plenary test. It has been suggested that § 121 re-enacts only those provisions of Title II of the Bankrupty Reform Act that were not replaced by positive provisions in the BAFJA. *In re O'Bannon,* 49 B.R. 763, 769 fn. 15 (N.D.La.1985). This interpretation would mean that § 1480(b) was immediately repealed by § 1411(b), but that § 1480(a) was re-enacted by § 121(a) until impliedly repealed by § 1411(a). I do not accept this interpretation, nor can I read such a legislative intention into the statute.

In the present action plaintiff asserts that they are entitled to $400,000 they paid defendants on an insurance claim, because defendants filed a fraudulent claim. When defendants filed bankruptcy in November 1982, they were in possession of the Lady Christine. They insured it after the Chapter 11 filing and the insurance proceeds were also paid to defendants after the Chapter 11 filing. Plaintiff argues that, accordingly, the insurance monies paid to defendants were not property of the estate and the action was thus plenary in nature. I do not agree. 11 U.S.C. § 541(a)(6) expressly provides for the inclusion of such proceeds in the bankrupt's estate. I find that this action constitutes a "demand or claim against the estate" and thus summary in nature. *Katchen v. Landry,* 382 U.S. 323, 329, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966). Accordingly, plaintiffs were not entitled to a jury trial.

Although I do not adopt the reasoning of the bankruptcy court, I affirm its holding. The bankruptcy court's decision on this issue was rendered on May 10, 1984, and was based on the interpretation of 28 U.S.C. § 1480(a). As noted earlier, this section

---

1. *See* Vol. III, No. 3, *ABI Newsletter,* Winter 1984/1985, comments of Senator Dole (§ 121(a) was a mistake and should be ignored).

was repealed or rendered ineffective by § 113 of the BAFJA on July 10, 1984.

*Attorney's Fees*

Plaintiff argues that the bankruptcy court's Order of December 23, 1985, awarding defendants attorney's fees, should be overturned for two reasons. First, plaintiff argues that the bankruptcy court lacked jurisdiction to award attorney's fees because a notice of appeal had been timely filed prior to defendants submitting their petition. Plaintiff next argues that there is no basis under either federal or state law for the award of attorney's fees. Specifically plaintiff argues that the bankruptcy court's award of attorney's fees under O.R.S. 743.114 is erroneous. Plaintiff also argues that defendants' claim for attorney's fees is improperly before the court because it was raised in an amended pleading in which defendants failed to obtain leave to file from the court. I reject plaintiff's arguments that the petition for attorney's fees was not timely or was improperly filed. However, I do find plaintiff's argument that an award of attorney's fees under O.R.S. 743.114 is erroneous in this case.

■ Plaintiff argues that once it filed its notice of appeal on September 14, 1984, the bankruptcy court was divested of all jurisdiction over the case. In support of this contention plaintiff cites 28 U.S.C. § 158. The reliance on this statute for its contention that the bankruptcy court lacked jurisdiction to consider defendants' petition for attorney's fees is misplaced. That statute merely outlines the procedures to be used in appealing bankruptcy court decisions to the district court. Plaintiff cites no further authority for this position.

It is well settled that a district court retains jurisdiction to rule on petitions for attorney's fees notwithstanding the timely filing of a notice of appeal. *League of Women Voters of California v. F.C.C.*, 751 F.2d 986, 990 (9th Cir.1985). *See also Masalosalo by Masalosalo v. Stonewall Insurance Co.*, 718 F.2d 955, 957 (9th Cir. 1983). (District court retained power to award attorney's fees even though notice of appeal had been timely filed). I find

that the bankruptcy court retained the jurisdiction to determine defendants' petition for attorney's fees even though plaintiff had filed its notice of appeal.

■ Plaintiff next argues that defendants first asserted their attorney's fees claim in an amended pleading that was not timely filed, and for which defendants failed to obtain leave of court to file. Plaintiffs' amended complaint was filed on February 21, 1984. Defendants answered on March 9, 1984, and filed an amended answer, containing a counterclaim asserting their attorney's fees claim, on April 2, 1984. The amended answer was filed 21 days after defendants' original answer and thus defendants could not amend as a matter of right under Fed.R.Civ.P. 15(a). Defendants did not obtain leave of court to file the amended answer. However, plaintiff did not object to its filing.

After the trial on the merits and at the hearing on defendants' petition for attorney's fees, plaintiff first objected to the filing of the amended answer. At that hearing (on October 29, 1984) the bankruptcy court granted leave to amend. In so doing the court noted

> I think all parties are aware of the fact, however, that all Federal Courts—and I guess now State Courts, as well—tend to liberally allow the amendment of pleadings, unless it would be a surprise, or work an unreasonable prejudice on the opposing side. Here the only matter contained in the counterclaim was a request for attorneys' fees. I don't see how the plaintiff can say they have been prejudiced if the Court were to allow the filing of the Amended Answer on a late basis.... [I]t doesn't appear the Amended Answer would prejudice any of the issues involved in trial. It certainly wouldn't have affected, as far as I can tell, the manner in which the case was presented. And since the Court instructed the parties the issue of attorneys' fees would be taken up at this proceeding, the Plaintiff certainly has not been prejudiced in its opposition of the request.

Transcript October 29, 1984 Hearing, pgs. 41–42.

Defendants argue that even if the bankruptcy court lacked jurisdiction to grant the leave to amend at the October 29, 1984 hearing, the amendment should be allowed because it would have been allowed had they sought leave of court at the time the amended answer was filed. Defendants cite *Straub v. Desa Industries, Inc.*, 88 F.R.D. 6, 89 (M.D.Pa.1980) in support of their position. I find this case to be sufficiently on point. Defendants have demonstrated that had they sought leave of court to file their amended answer, permission would have been granted. To ignore the amended answer now would be in derogation of the liberal amendment policies embodied in Fed.R.Civ.P. 15(a). I decline to strike the amended answer and find that the issues asserted therein are properly before the court.

I base this holding not only on the liberal policies of Fed.R.Civ.P. 15(a), but also on the facts of this case. The record indicates that defendants had sent the amended answer to Eugene via Greyhound bus and had received a receipt indicating that it had been filed with the court on the twentieth day. Defendants did not seek leave to file the amended answer because they thought it had been filed within the twenty days set forth in Fed.R.Civ.P. 15(a). The record also indicates that plaintiff was fully aware of the counterclaim in the amended answer. The only claim in the counterclaim was one for attorney's fees. Plaintiff never filed a reply to the counterclaim because its attorney "had forgotten to file a reply." Transcript October 29, 1984 Hearing, page 6. As a courtesy defendants' attorney informed plaintiff's lawyer that he would not default plaintiff and would deem the counterclaim denied. *Id.* Plaintiff's counsel was grateful.

The record also shows that plaintiff's counsel acknowledged the issue of attorney's fees at the close of the trial. Transcript September 7, 1984 Trial, page 111. Plaintiff nevertheless did not object to the untimely filing of the amended answer at that time. Nor was any objection raised between April 2, 1984 and the trial date. Rather, plaintiff's first objection was during post trial briefing of the attorney's fees issue. I am hard pressed to discern any prejudice, surprise or hardship suffered by plaintiff by allowing defendants' counterclaim for attorney's fees to stand. I cannot accept plaintiffs' hypertechnical application of Fed.R.Civ.P. 15(a) and find that defendants' counterclaim was properly before the court.

Plaintiff next argues that, notwithstanding defendants' counterclaim for attorney's fees, they had no statutory or common law right to attorney's fees and the bankruptcy court's award was in error. I agree.

The bankruptcy court found that defendants were entitled to attorney's fees pursuant to O.R.S. 743.114 which provides

If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

This statute applies on the occurrence of three events: 1) the insurance company does not settle the claim within six months; 2) an action is brought on the insurance policy; and, 3) the insured obtains a recovery of more than the amount tendered by the insurance company.

In finding that defendants were entitled to attorney's fees under O.R.S. 743.114 the bankruptcy court made three specific findings of fact. First, the bankruptcy court found that plaintiff did not settle the Pughs' claims within six months. The court noted that although plaintiff paid the policy limit to defendants, it did not settle their claims because it instituted the adversary proceeding shortly thereafter claiming defendants had no rights to the money. Second, the court found that the source of plaintiff's action against defendants was the underlying insurance policy. Lastly, the court determined that defendants re-

covered an amount in excess of that tendered by plaintiff.

Findings of fact can be overturned only if they are clearly erroneous. *Bohemia, Inc. v. Home Insurance Co.*, 725 F.2d 506, 509 (9th Cir.1984), Fed.R.Civ.P. 52(a). Unless I am "left with the 'definite and firm condition that a mistake has been committed,' (citation omitted), [I] must accept the trial court's finding." *Id.* citing *Inwood Laboratories v. Ives, Laboratories,* 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982).

■ Plaintiff argues that the action was not "brought on an insurance policy." Instead, plaintiff argues, this action was for money had and received and as such was tortious in nature. The bankruptcy court expressly rejected this argument citing *Travelers Insurance Co. v. Plummer,* 278 Or. 387, 563 P.2d 1218 (1977). In that case the insurance company unsuccessfully sued the insured to recover funds it had advanced on a loan receipt. The insurance company argued that the action was not "brought on an insurance policy" and, therefore, O.R.S. 743.114 did not apply. The Oregon Supreme Court was not persuaded stating that the company's claim forced the insured to litigate the same as if the company had never advanced the money. I find the bankruptcy court's determination that this action was "brought on an insurance policy" to be correct.

■ Plaintiff also argues that it settled defendants' claim within six months and therefore the first criterion of O.R.S. 743.-114 has not been met. The bankruptcy court found that plaintiff did not "settle" the claim because it disputed defendants' entitlement to the funds it advanced to them under the insurance policy. I do not agree. The insurance company, in good faith, advanced defendants the entire amount of the policy when they filed their claim of loss. At the time of the claim there was no dispute as to whether defendants were entitled to payment under the policy. It was not until months later, when the insurance company became aware of a possible fraud, that the payment to defendants was disputed by the insurance compa-

ny. I find that defendants' claim was "settled" within six months.

■ Plaintiff also argues that defendants did not obtain a money judgment and therefore the third prerequisite of O.R.S. 743.114 has not been met. Plaintiff states that it sought to recover the money it had paid to defendants, "not a penny more or less." The bankruptcy court addressed this argument and rejected it.

The bankruptcy court emphasized that plaintiff attempted to recover all funds paid to defendants under the policy and to impose a constructive trust. Thus, the court reasoned, there was in reality no tender by plaintiff to defendants. Accordingly, the court held, the judgment defendants obtained in their favor was analogous to a money judgment and the provisions of O.R.S. 743.114 applied. Slip opinion at 8 (Dec. 23, 1985). I do not agree. The question is whether defendants' recovery was more than the amount tendered by the insurance company. The insurance company tendered $400,000 to defendants when it settled the claim. Later, on discovery of possible fraud, plaintiff challenged defendants' entitlement to the $400,000. The bankruptcy court found that plaintiff has failed to prove fraud on defendants' part and they were therefore entitled to the $400,000. Defendants did *not* recover more than the amount tendered.

The Oregon courts have stated that O.R.S. 743.114 was enacted to encourage settlement of insurance claims without the expense of litigation and to discourage the unreasonable rejection of claims by insurers. *Chalmers v. Oregon Auto Insurance Co.,* 263 Or. 449, 502 P.2d 1378 (1972); *Heis v. Allstate Insurance Co.,* 248 Or. 636, 436 P.2d 550 (1968). To award attorney's fees in this case would only serve to frustrate this policy. Here the insurance company immediately accepted and paid the insureds' claim. The expense of litigation was incurred only because of corroborated allegations of third parties that the insureds' claim was fraudulent.

## CONCLUSION

The bankruptcy court's finding that plaintiff was not entitled to a jury trial is

affirmed. Although I find that court's reasoning to be inapplicable because of subsequent amendments and repeals of statutes, I nevertheless concur in that court's decision on the issue. I reverse the bankruptcy court's holding that defendants were entitled to attorney's fees pursuant to O.R.S. 743.114. Defendants are not entitled to an award of attorney's fees in this action.