In re **EDGEWATER SUN SPOT, INC., and Edgar L. and Jane E. Mathieu, Debtors.**

**EDGEWATER SUN SPOT, INC., Edgar L. Mathieu, and Jane E. Mathieu, Appellants,**

v.

**PENNINGTON & HABEN, P.A., Appellee.**

No. 94–50370–RV.

United States District Court, N.D. Florida, Panama City Division.

June 23, 1995.

David L. Fleming, David L. Fleming P.A., Gulf Breeze, FL, for Edgewater Sun Spot, Inc., Edgar L. Mathieu, Jane E. Mathieu.

Dayten P. Hanson, Pennington, Haben, Wilkinson, Culpepper et al., Carl Edwin Rude, Jr., Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, FL, for Pennington & Haben, P.A.

Charles Glidewell, Trustee, Tallahassee, FL.

## ORDER

VINSON, District Judge.

Debtors, Edgewater Sun Spot, Inc., Edgar L. Mathieu, and Jane E. Mathieu, have appealed from a decision of the Bankruptcy Unit of this Court in their jointly administered bankruptcy cases [*In re Edgar L. and Jane E. Mathieu*, Case Number 91–02303 and *In re Edgewater Sun Spot, Inc.*, Case Number 91–02304]. Appellants contend that the Bankruptcy Judge erred in awarding attorney's fees and costs to appellee Pennington & Haben, P.A. Appellants also contend that the Bankruptcy Judge erred in denying their motion for partial abstention, and in his evidentiary rulings during the hearing on the appellee's motion for fees. For the reasons set out below, the decision of the Bankruptcy Judge is AFFIRMED.

1. At the time this litigation was commenced, the firm's full name was Pennington, Wilkinson and Dunlap. In 1993, as a result of a merger, the name of the firm was changed to Pennington, Haben, Wilkinson, Culpepper, Dunlap, Dunbar,

## FACTUAL BACKGROUND

In July 1991, appellant Edgar L. Mathieu retained appellee Pennington and Haben, P.A. ("P & H")[1] to file a Chapter 11 bankruptcy petition on behalf of Mathieu and his wife, appellant Jane E. Mathieu, and one for the Mathieus' company, appellant Edgewater Sun Spot, Inc. Voluntary Chapter 11 petitions were filed on August 9, 1991, and the cases were ordered to be jointly administered.

Initially, Mark Hildreth, a P & H associate, was assigned to handle the appellants' cases. On September 30, 1991, Hildreth notified the appellants that he would soon be leaving P & H to return to Sarasota, Florida, and another P & H associate, D. Andrew Byrne, would assume responsibility for the litigation. However, Hildreth agreed to be available to assist Byrne and P & H with the bankruptcies.

A secured creditor and appellants' major adversary in the bankruptcy litigation was Bay Bank and Trust Co. ("Bay Bank"), located in Panama City, Florida. In March 1987, Bay Bank had extended the appellants two loans totalling $1.35 million. One of the loans, for $650,000.00, had been guaranteed by the Small Business Administration ("S.B.A."). For four years, the appellants timely made payments on the loans from Bay Bank. However, in 1991, appellants fell behind in their payments. At that time, Edgar Mathieu claimed, for the first time, that Bay Bank had deceived him into taking out a larger loan than he had wanted, and that he had not read the closing documents prior to signing them.

At a meeting on October 9–10, 1991, it was decided that Byrne would assume responsibility for bringing a lender liability action against Bay Bank, and Hildreth would be retained to handle the Chapter 11 administration. Hildreth indicated in a October 18, 1991, letter that he did not believe that the appellants had "any substantial affirmative claims against Bay Bank." However, Hil-

Richmond and French, P.A. For simplicity's sake, I have followed the Bankruptcy Judge's practice, and referred to the appellee as Pennington and Haben.

dreth indicated that he felt that the appellants' could utilize the threat of an action against Bay Bank as leverage against the bank in the Chapter 11 proceeding.

In April 1992, P & H filed an interim application for fees and costs. The appellants did not oppose the motion. On July 27, 1992, the Bankruptcy Judge entered an order awarding the appellee interim fees of $19,500.00 and costs of $4,450.70. The bankruptcy case was lengthy and acrimonious, but eventually a settlement was reached with Bay Bank. The appellants' Chapter 11 reorganization plans were confirmed on December 15, 1993.

In February 1994, the appellee filed a final application (labeled "supplemental application") for fees and costs. The appellee sought $62,470.50 in attorney's fees and $9,166.42 in costs, as well as the $19,500.00 still unpaid from the first fee award. Attorney David L. Fleming entered a special appearance solely for the purpose of opposing P & H's fee application. However, Fleming did not file any written objections to the fee application until after the Bankruptcy Judge entered an order to compel. In response, P & H filed a second supplement to its fee application in which it reduced its requested fees and costs to a total of $52,415.06.

A hearing on the fee application was held before Bankruptcy Judge Lewis Killian on June 30, 1994. At the close of the hearing, Judge Killian reserved ruling for 30 days and allowed the parties to file written closing arguments and memoranda of law. The appellants timely filed a memorandum asserting that Byrne was not a disinterested party within the meaning of the Bankruptcy Code, and that P & H's fee application was inflated. On October 12, 1994, Judge Killian entered a lengthy written order, which granted to P & H the fees and costs requested in its second supplemental application.[2] The appellants timely filed a notice of appeal of this order.

## STANDARD OF REVIEW

▮▮▮ A district court reviewing the decision of its Bankruptcy Unit functions as an

appellate court. *In re Sublett,* 895 F.2d 1381, 1383 (11th. Cir.1990). An award of attorney's fees is reviewed only for an abuse of discretion. *In re Holywell Corp.,* 967 F.2d 568, 571 (11th Cir.1992). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination." *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883, 890 (11th Cir.1990). Evidentiary rulings are also reviewed under an abuse of discretion standard. *Wu v. Thomas,* 996 F.2d 271, 275 (11th Cir.1993); *Haygood v. Auto–Owners Insurance Co.,* 995 F.2d 1512, 1515 (11th Cir.1993).

## DISCUSSION

The appellants contend that the Bankruptcy Judge erred in finding that the appellee was a disinterested party under the terms of the Bankruptcy Code; that he erred in failing to order partial abstention; that he erred in awarding the appellee fees; and that he erred in certain evidentiary rulings during the hearing on the appellee's motion for fees.

### 1. *Disinterested Party.*

▮▮▮ Title 11, United States Code, Section 327(a) permits the trustee, with approval of the court, to employ attorneys and other professionals. The appellee was employed pursuant to this statute. Section 328 of the same title contains limitations on the compensation of professionals employed under Section 327. It provides in pertinent part:

> Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under Section 327 or 1103 of this title, if at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

**2.** In his order, Judge Killian announced that pursuant to Rule 9011, Federal Rules of Bankruptcy Procedure, he would *sua sponte* consider

imposing sanctions on the Mathieus and/or Fleming for their actions in objecting to the appellee's application for fees and costs.

11 U.S.C. § 328(c). Section 328(c) is discretionary; it *permits* (but does not *require*) a court to deny compensation to professionals not found to be disinterested parties. *In re Prince,* 40 F.3d 356, 359 (11th Cir.1994).

The appellants assert that the appellee's application for fees should have been denied completely, or at least reduced, because attorney Byrne was not a disinterested party within the meaning of the Bankruptcy Code. Whether an individual is a disinterested party is a finding of fact which should be reversed only if clearly erroneous. *In re Andura Corp.,* 39 F.3d 1191 (10th Cir.1994).

Initially, appellants assert that attorney Byrne was not disinterested because he was a member of the Small Business Administration's Regional Advisory Council ("S.B.A. Advisory Council") at the same time that John Christo, III, the president of Bay Bank, was also a member of the S.B.A. Advisory Council.[3] The parties dispute whether Byrne disclosed his membership on the S.B.A. Advisory Council to appellant Edgar Mathieu. The record reflects that the S.B.A. Advisory Council is composed of businessmen who advise the S.B.A. "about vital issues affecting small business." The S.B.A. Advisory Council represents potential borrowers and the community at large to the S.B.A.. Its role is purely advisory, and the Advisory Council has no input into the approval or management of loans.

The appellants assert in their brief that it "is common knowledge" that attorneys only join organizations like the S.B.A. "to make contacts." Appellants contend that Byrne's membership on the S.B.A. Advisory Council was a conflict of interest. The appellants claim that Byrne's recommendation that deposing S.B.A. officials was unnecessary and would be a waste of money was a ruse, motivated not by the interests of the appellants, but by Byrne's membership on the S.B.A. Advisory Council. However, Byrne testified at the hearing that Bay Bank had the authority to approve the loan without prior submission to the S.B.A., and that the

S.B.A. had no knowledge of the circumstances of the loan or any documents which had not already been obtained from Bay Bank. Byrne testified that although Edgar Mathieu was convinced that there was a conspiracy by the S.B.A., its only role was to guarantee the loan, and that in his professional opinion, deposing S.B.A. officials would have been a waste of the assets of the bankruptcy estate.

The S.B.A. Advisory Council has no role in the approval or management of loans. Likewise, it is undisputed that the S.B.A. was only a contingent creditor, was not mentioned in the settlement agreement, and played no role in the administration of the case. Moreover, the role of the S.B.A. Advisory Council is to represent the interests of S.B.A. borrowers, such as the appellants. Under these facts, the Bankruptcy Judge found that Byrne's membership on the S.B.A. Advisory Council did not constitute a conflict of interest or render Byrne not a disinterested party. There is ample record evidence to support that determination, and it is not clearly erroneous. The order regarding Byrne's membership on the S.B.A. Advisory Council is affirmed.

Appellants also assert that Byrne was not a disinterested party because members of his family held a financial interest in a Georgia bank. The record reflects that Byrne's wife is a minority stockholder and member of the board of directors of First National Bank of Grady County ("First National"), located in Cairo, Georgia. Byrne's father-in-law, John B. Wight, is controlling stockholder and chairman of the board of First National. Byrne has no personal interest in First National.

Charles Martin Stafford testified at the hearing on this matter held before the Bankruptcy Judge. Martin is president and vice chairman of the board of First National. Martin testified that First National does not have a correspondent bank relationship with Bay Bank, but that it does sometimes purchase loans from the Bay Bank. Martin

---

**3.** Although Byrne had recently been appointed to the S.B.A. Advisory Council, the Council had not met since his appointment, and Byrne had never attended a meeting as a member. Byrne once gave a speech to the S.B.A. Advisory Council prior to becoming a member. Byrne testified that Christo was not at the meeting in which Byrne spoke to the S.B.A. Advisory Council.

became friends with both John Christo, III, and his father, John Christo, Jr., when all three men worked together as bank examiners.

Byrne did not disclose the fact that First National sometimes purchased loans from Bay Bank to the appellants or to the court. However, Byrne testified at the hearing that he did not know of the relationship between the banks, and even at the time of the hearing, he still had no knowledge of the relationship. Byrne testified that neither his wife nor his father-in-law ever discussed that matter with him. Martin testified that he considered the purchase of loans from Bay Bank to be "business strategy decisions" which he made, and that he did not discuss them with either Mrs. Byrne or her father.

The appellants do not explicitly contest the evidence that Byrne had no knowledge of First National's purchase of loans from Bay Bank. Appellant Edgar Mathieu even admitted that he had no evidence that Byrne knew of the relationship between the banks. Appellants merely assert that Martin's testimony is "disingenuous and totally lacks credibility." However, appellants have pointed to no evidence of record which contradicts Martin's testimony. I find no evidence that Byrne himself then knew that First National purchased loans from Bay Bank.

None of the loans which First National purchased from Bay Bank involved the appellants. In short, there is no evidence that First National or Byrne's family would be economically affected by the outcome of the appellants' litigation against Bay Bank. The Bankruptcy Judge's decision that Byrne remained a disinterested party is not clearly erroneous, and must be affirmed. *In re Prince*, 40 F.3d 356 (11th Cir.1994); *In re Amdura Corp.*, 39 F.3d 1191 (10th Cir.1994).

## 2. *Abstention.*

During the pendency of the bankruptcy proceedings, the appellants filed a legal malpractice action against Pennington & Haben in state court. The state court action is based on the appellee's prosecution of the lender liability claim against Bay Bank. Appellants filed a motion requesting that the Bankruptcy Court voluntarily abstain from deciding the appellee's motion for fees and costs since it involved their claims in the state court action. The Bankruptcy Judge denied the motion. Appellants assert that Judge Killian erred in refusing to order abstention.

Title 28, United States Code, Section 1334 authorizes a federal court to abstain from hearing certain issues which arise during a bankruptcy action. It provides in pertinent part:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).[4]

■ The appellants assert that the Bankruptcy Judge should have abstained from deciding the appellee's motion for fees for its services to the bankruptcy estate. The determination of fees of an agent of the estate is a core proceeding within the exclusive jurisdiction of the Bankruptcy Court. 28 U.S.C. § 157(b)(2)(A).

■ Appellants assert that the Bankruptcy Judge should have abstained because awarding attorney's fees to the appellee somehow prejudiced the appellants' state court action. Initially, I note that an action for malpractice against the trustee's attorneys cannot be commenced in state court without prior approval of the bankruptcy court, and the state court lacks jurisdiction to hear any case so filed. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993); *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (9th Cir. BAP 1989). There is no indication in the record that the appellants sought or received the approval of the Bankruptcy Court prior to filing the state court action.

---

4. Section 1334(c)(2) provides for abstention in regard to causes of action which could not have been commenced in federal court, absent bankruptcy jurisdiction. It is, of course, inapplicable to the appellee's motion for fees.

Nevertheless, the appellants' abstention argument is without merit. At times, the appellants assert that the issue in the state malpractice action substantially overlaps the appellee's motion for fees and that the appellants will be denied a jury trial, among other advantages of a state forum, because the Bankruptcy Judge decided the appellee's motion for fees. At other places in its brief, the appellants assert that the state claim is distinct. The appellants cannot have it both ways. If it is distinct, then one claim is irrelevant to the other, and there is no reason for the Bankruptcy Court to abstain.

Even if the two claims do overlap, the record reflects no factors which favor abstention. Judge Killian was fully familiar with the services provided by the appellees. He conducted a full-day hearing on the matter. He was in a better position to evaluate the value of the appellee's services than a jury would be. He would have been in no better position to decide the motion for fees after the state court action was concluded. Moreover, it is not apparent from the record how appellants were prejudiced in their state court action. Finally, even if I accept the appellants' arguments in full, a postpetition malpractice action against the bankruptcy trustee's attorneys is equitable in nature, and there is no right to a jury trial.

Although cited by neither party, *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1253 (3rd Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994), is directly on point. There, the debtors in possession objected to the bankruptcy counsel's application for fees on the grounds that the fees were inflated and that the attorney's services had been below the standard of care. 22 F.3d at 1242. The debtors commenced a malpractice action against the bankruptcy counsel in the District Court. The Third Circuit held that this was an equitable claim, and that the debtors had no right to a jury trial:

> We hold that an allegation of legal malpractice raised as a defense to post-petition fees for bankruptcy counsel likewise falls within the process of the allowance and disallowance of claims. The debtors have no Seventh Amendment right to a

trial by jury, not because of specific waiver of Seventh Amendment rights, but because their claim has been converted from a legal one into an equitable dispute over a share of the estate.

22 F.3d at 1253.

There was no error in the Bankruptcy Judge's decision regarding abstention.

### 3. *Basis for the Fee Award to the Appellee.*

■ Devoting only one paragraph of its brief to the issue, the appellants argue that the Bankruptcy Judge failed to articulate a sufficient basis for the award of fees to the appellee. The appellee filed detailed fee applications, reporting the time expended by each individual in one-tenth of an hour increments. The appellee's hourly charge for the attorneys' services ranged from $100.00 to $150.00. The Bankruptcy Judge had evidentiary materials supporting the appellee's fee request. He determined that the appellee should be awarded fees as requested. The trial judge who observed the attorneys' performance is in a superior position to evaluate the value of their services, and his decision should be reversed only for an abuse of discretion. *In re Holywell Corp.*, 967 F.2d 568, 571 (11th Cir.1992). There was no abuse of discretion.

### 4. *Evidentiary Rulings.*

■ Finally, appellants assert that the Bankruptcy Judge made four errors in his evidentiary rulings. First, the appellants contend that Judge Killian erred in excluding the expert testimony of Gordon P. Serou, Jr. The trial court "has broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir.1993) (citing *Salem v. United States Lines Co.*, 370 U.S. 31, 34, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962)).

■ At the hearing on this matter, the appellants attempted to call Gordon P. Serou, Jr., an attorney, as an expert witness. The appellee's attorney indicated that he had nev-

er heard of the witness. While objecting to the label "surprise witness," the appellants' attorney conceded that, while he had discussed the other witnesses with opposing counsel, he had not disclosed Serou. Judge Killian then excluded Serou.

Appellants correctly note that the witness disclosure provisions of Rule 26, Federal Rules of Civil Procedure, do not apply in Bankruptcy Court. *See* Rule 81(a)(1), Fed. R.Civ.P. However, Local Bankruptcy Rule 507(F) requires a party intending to introduce expert testimony to make the expert available for deposition. Implicit in that rule is a requirement to reveal the existence of the expert. A party cannot depose a witness whose identity has not been revealed. Judge Killian was well within his discretion when he excluded the testimony of an undisclosed expert witness.

Second, the appellants assert that the Bankruptcy Judge erred in refusing to admit into evidence Defendant's Exhibits 9 and 10. Exhibit 9 is eight pages in length and is entitled, "28: Lost Profits." It purports to have been authored by two certified public accountants and appears to be a chapter from some type of handbook or reference work. Exhibit 10 is a photocopy of a three page article entitled Litigation Support Services. It purports to be "MAS Notes" in the September 1991 issue of *Florida CPA Today,* and to have been written by Michael A. Crain, C.P.A. Both appear to be inadmissible hearsay, and there is no evidence in the records that these documents were relied upon by the accountants who testified at the trial, or were within Rule 803(18) of the Federal Rules of Evidence. Moreover, I have carefully read both documents. Both have little or no relevance to the issue of the appellee's motion for fees. Judge Killian did not abuse his discretion in declining to admit appellants' exhibits 9 and 10 into evidence.

The last two evidentiary errors raised involve Byrne's testimony. Appellants assert that the Bankruptcy Judge erred in allowing Byrne to testify that he had been involved in representing two other debtors in Chapter 11 actions. Appellants contend that their post-trial investigation revealed that Byrne's testimony was misleading (apparent-

ly because he was not the attorney of record in those cases). Appellants also assert that Judge Killian erred in relying upon 13 pages of Byrne's handwritten notes to support one time entry, arguing that although Byrne authenticated the notes at the hearing, they were "a falsification." These objections go to the weight of the evidence, but not the admissibility. There was no error in admitting either into evidence.

Even if I assume that admission of this testimony constitutes error, it was harmless. The characterization given to Byrne's role in the earlier cases is of little or no relevance to the value of the appellee's services in this case. Similarly, there was ample evidence in the record as to the nature and value of the appellee's services.

## CONCLUSION

The decision appealed from is AFFIRMED in all respects.

DONE AND ORDERED.