188 F.3d 1160 (9th Cir. 1999)
 In re: SHELLY ELIAS, Debtor.
SHELLY ELIAS, Appellant,
v.
U.S. TRUSTEE, Las Vegas,
and
LISOWSKI LAW FIRM, LTD., Appellees.
 No. 98-15347
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 9, 1999
Decided August 30, 1999
 
 Robert A. Nersesian, Law Offices of Robert A. Nersesian, Las Vegas, Nevada, for the appellant.
 Elizabeth E. Stephens, Lisowski Law Firm, Las Vegas, Nevada, for the appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel; Russell, Marlar, and Meyers, Bankruptcy Panel. BAP NV-95-02258-RmaMe.
 Before: Mary M. Schroeder, Ferdinand F. Fernandez, and Barry G. Silverman, Circuit Judges.
 Per Curiam Opinion; Partial Concurrence and Partial Dissent by Judge Fernandez.
 PER CURIAM.
 
 
 1
 In 1994, Shelly Elias filed for Chapter 11 bankruptcy. The Lisowski Law Firm ("Lisowski"), which had represented Elias in the past, was appointed bankruptcy counsel after failing to reveal to the bankruptcy court that a few days earlier it had accepted several thousand dollars from Elias as a retainer and to discharge a prior debt. After Elias and Lisowski had a falling out and Elias dismissed her bankruptcy case, Lisowski sued Elias in state court for attorney's fees. Elias contended that Lisowski was not entitled to fees because the non-disclosure rendered the appointment invalid. The state court asked the bankruptcy court to rule on the propriety and the amount of the fees. The bankruptcy court declined to reopen to set aside the order appointing Lisowski as bankruptcy counsel and also declined to consider the fee issue. The Bankruptcy Appellate Panel affirmed. See Elias v. Lisowski (In re Elias), 215 B.R. 600 (B.A.P. 9th Cir. 1997). Elias appeals.
 
 
 2
 Although the parties debate whether Lisowski acted improperly in failing to disclose its prior dealings with Elias, that issue is not before us on appeal. The questions we must decide are whether the bankruptcy court abused its discretion when it declined to reopen to set aside the appointment order and whether it improperly declined to adjudicate the attorney's fees. "We review the bankruptcy court's decision independently, without deference to the BAP." Beaupied v. Chang (In re Chang), 163 F.3d 1138, 1140 (9th Cir. 1998), cert. denied, 119 S. Ct. 2029 (1999). We hold that the bankruptcy court properly declined both to reopen and to consider the fees.
 
 
 3
 The bankruptcy court generally has discretion regarding whether it should reopen proceedings to reconsider its prior orders. See 11 U.S.C. S 350(b). It did not abuse its discretion in declining to do so in this case. There would have been no point in reopening the case to consider Elias' motion to vacate the appointment of Lisowski, for Lisowski had already completed its services, and retroactive vacation was not necessary for a determination of fees in favor of Elias. See In re ParkHelena Corp., 63 F.3d 877, 882 (9th Cir. 1995).
 
 
 4
 We also affirm the bankruptcy court's refusal to consider the fees. A post-dismissal motion to enforce a fee agreement between a debtor and her attorney is ancillary to the bankruptcy court's core function of adjudicating the estate. See, e.g., Tsafaroff v. Taylor (In re Taylor), 884 F.2d 478, 481 (9th Cir. 1989) (citing U.S.A. Motel Corp. v. Danning, 521 F.2d 117 (9th Cir. 1975)). The bankruptcy court has discretion to refuse to hear ancillary matters. See In re Casamont Investors, 196 B.R. 517, 521-23 (B.A.P. 9th Cir. 1996). Because we agree with the bankruptcy court that the state court is fully capable of resolving the fee dispute in this case, we hold that the bankruptcy court did not abuse its discretion in declining to decide the fee issue.
 
 
 5
 AFFIRMED.
 
 
 6
 FERNANDEZ, Circuit Judge concurring and dissenting:
 
 
 7
 Because I see the questions and answers somewhat differently from the majority, I concur in part and dissent in part, but in so doing must restate the case.
 
 
 8
 Elias retained Lisowski Law Firm as counsel when she sought to file a Chapter 11 proceeding. The firm had also represented her before, and was then owed money for its previous services. Elias paid $3,000 of those fees, and also paid Lisowski a retainer for services regarding the bankruptcy, which was filed within 90 days of the $3,000 fee payment.
 
 
 9
 When the firm petitioned for appointment as debtor's attorney it should, by all accounts, have revealed those payments, and its prior connections with Elias. See Fed. R. Bankr. P. 2014(a). It did not; in fact it stated that no retainer had been paid, that it had no interest adverse to the estate, and that it had no connection to the debtor, her creditors, or any other party in interest. The court appointed Lisowski. It appears that at a later time during the proceedings at least some of the information came out; for example, the payment of the retainer was disclosed in Elias' statement of financial affairs.
 
 
 10
 After about a year of proceedings, the case was dismissed upon a motion filed by Elias through Lisowski. No applications for attorney's fees had been made during the proceedings. However, after the dismissal Lisowski sued Elias in state court for fees for services rendered in the bankruptcy proceeding, but that court was unsure of how it should proceed, so it asked the parties to return to the bankruptcy court for the purpose of obtaining an opinion as to whether Lisowski's failure to make the disclosures, and the like, should affect the fees.[1]
 
 
 11
 As a result, Elias filed a motion in the bankruptcy court in which she asked that court to vacate the order authorizing the employment of Lisowski, to strike its attorney's lien, and to determine that there was no entitlement to fees, that is, essentially, that the fees should be set at zero. Lisowski responded, denied any real wrongdoing, told the court that it could award fees, and asked for an award.
 
 
 12
 The bankruptcy court declined to reopen for the purpose of setting aside the appointment of Lisowski, and went on to declare that it had no jurisdiction to determine the amount of the fees. It opined that the state court could decide the fee issues, including any sanctions that should be applied. The BAP agreed and added that under the circumstances any decision by the bankruptcy court would be an advisory opinion. See Elias v. Lisowski (In re Elias), 215 B.R. 600 (9th Cir. BAP 1997) (Elias I). This appeal followed, and we are required to address jurisdictional issues.
 
 
 13
 We review questions regarding the existence of subject matter jurisdiction de novo because they are questions of law. See Hinduja v. ARCO Products Co., 102 F.3d 987, 989 (9th Cir. 1996). However, a bankruptcy court's decision to reopen a case is discretionary. See 11 U.S.C. S 350(b). Thus, we review that decision for abuse of discretion. Cf. Carraher v. Morgan Electronics, Inc. (In re Carraher), 971 F.2d 327, 328 (9th Cir. 1992); Davis v. Courington (In re Davis), 177 B.R. 907, 910-11 (B.A.P. 9th Cir. 1995). In other words, we will not disturb the bankruptcy court's exercise of discretion unless we have " `a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " Moneymaker v. CoBen (In re Eisen), 31 F.3d 1447, 1451 (9th Cir. 1994) (citation omitted).
 
 
 14
 As I see it, the issues presented in this case ultimately revolve about Lisowski's alleged failure to make proper disclosures to the bankruptcy court when it sought appointment. It was required to disclose "all . . . connections with the debtor, creditors, [or] any other party in interest." Fed. R. Bankr. P. 2014(a). It also had to disclose all possible conflicts so that the court could assure itself that there were no conflicts of interest, and that the attorneys were disinterested. See 11 U.S.C. S 327(a). Moreover, a statement of consideration paid or agreed to be paid for attorney services was required. See 11 U.S.C. S 329. The bankruptcy court and the BAP agreed that a failure to make the required disclosures is sanctionable. See Elias I, 215 B.R. at 603; see also id. at 614 (Russell, J, dissenting). In fact, "[e]ven a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees." Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 882 (9th Cir. 1995).
 
 
 15
 That being said, the questions before us are whether the bankruptcy court abused its discretion when it declined to reopen, and, more than that, whether it had jurisdiction to decide the attorney's fees issue, with or without reopening.
 
 A. Refusal to Reopen Appointment Order
 
 16
 As I have already stated, the bankruptcy court does have discretion regarding whether it should reopen proceedings to reconsider its prior orders. See 11 U.S.C.S 350(b). In this case, the court declined to do so.
 
 
 17
 The order that the bankruptcy court would have had to reconsider was the appointment of Lisowski in the first place. Elias asked that the appointment be vacated. It is difficult to see much purpose to an order of that nature. Clearly, Lisowski had rendered services under the appointment and, just as clearly, those services had been completed. Whether Lisowski should receive fees was another question entirely; that determination did not require retroactive vacation of the appointment. See In re Park-Helena, 63 F.3d at 882.
 
 
 18
 As the bankruptcy court and the BAP pointed out, the bankruptcy estate had been closed for eight months, there was no indication that creditors had actually been or would be harmed, there was no indication that Elias had been harmed, and Elias herself had sought the dismissal of the case in the first place. Certainly, the decision not to reopen to set aside the appointment order fell within the broad range of conclusions that the bankruptcy court could permissibly reach. See Security Farms v. International Bhd. of Teamsters , 124 F.3d 999, 1016 (9th Cir. 1997). I do not have a " `definite and firm conviction' " that the bankruptcy court committed a " `clear error of judgment.' " In re Eisen, 31 F.3d at 1451 (citation omitted). Thus, I agree that there was no abuse of discretion in the refusal to reopen.
 
 B. Jurisdiction Over Fee Issue
 
 19
 The BAP held that there was no jurisdiction to decide the issue of Lisowski's attorney's fees. In fact, that was its primary holding. See Elias I, 215 B.R. at 603-04. In so doing it upheld the bankruptcy's court's decision that it had "nojurisdiction to order the additional relief requested, " that is, a fee determination. Both the BAP and the bankruptcy court appeared to believe that the issue could only be considered if the proceeding were reopened and that, again, there was no jurisdiction to consider the fee issue in any event. With those decisions I cannot agree.
 
 
 20
 Attorney's fees issues are ancillary matters, which are essentially unrelated to judgments on the merits of cases. When a request is made for attorney's fees, that is not a motion to alter or amend the judgment of the court. See FCC v. League of Women Voters, 468 U.S. 364, 373 n.10, 104 S. Ct. 3106, 3114 n.10, 82 L. Ed. 2d 278 (1984); Sprague v. Ticonic National Bank, 307 U.S. 161, 170, 59 S. Ct. 777, 781, 83 L. Ed. 1184 (1939). As the Supreme Court has said:
 
 
 21
 Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits -- an inquiry that cannot even commence until one party has "prevailed." Nor can attorney's fees fairly be characterized as an element of "relief" indistinguishable from other elements . . . . Their award is uniquely separable from the cause of action to be proved at trial.
 
 
 22
 White v. New Hampshire Department of Employment Security, 455 U.S. 445, 451-52, 102 S. Ct. 1162, 1166, 71 L. Ed. 2d 325 (1982). By the same token, we have pointed out that even when a notice of appeal has been filed,"a district court in this circuit retains jurisdiction to rule upon a request for attorney fees." League of Women Voters v. FCC, 751 F.2d 986, 990 (9th Cir. 1985); see also Masalosalo by Masalosalo v. Stonewall Insurance Co., 718 F.2d 955, 957 (9th Cir. 1983). And, we have said, "it is clear that an award of attorney's fees is a collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits." Moore v. Permanente Medical Group, Inc., 981 F.2d 443, 445 (9th Cir. 1992). Indeed, "the district court's ruling on attorney's fees may occur at a point substantially beyond the entry of final judgment." League of Women Voters, 751 F.2d at 990 (judgment in August 1982, fee order in July 1983.)
 
 
 23
 In that same vein, we have made it quite clear that after dismissal a bankruptcy court, without reopening, retains jurisdiction "to dispose of ancillary matters such as an application for an award of attorney's fees for services rendered in connection with the underlying action." Tsafaroff v. Taylor (In re Taylor), 884 F.2d 478, 481 (9th Cir. 1989); see also St. Angelo v. Victoria Farms, Inc., 38 F.3d 1525, 1533 & n.8 (9th Cir. 1994) ("A court may properly award fees even after a bankruptcy case has been dismissed." Moreover, it can impose them on the erstwhile debtor.); Beneficial Trust Deeds v. Franklin (In re Franklin), 802 F.2d 324, 327 (9th Cir. 1986); U.S.A. Motel Corp. v. Danning (In re U.S.A. Motel Corp.), 521 F.2d 117, 119 (9th Cir. 1975).
 
 
 24
 Numerous bankruptcy courts have reached the same conclusion and have undertaken to decide attorney's fees issues after a judgment has been entered. See, e.g., American Universal Ins. Co. v. Pugh (In re Pugh), 72 B.R. 174, 178 (D. Ore. 1986). Beyond that, many have concluded that despite dismissal of the bankruptcy case the court must consider attorney's fees requests. See IRS v. Brickell Inv. Corp. (In re Brickell Inv. Corp.), 171 B.R. 149, 156 (S.D. Fla. 1994) ("Fees are such an essential item to the bankruptcy court's core of jurisdiction that the court can, and must, consider same, even after dismissal of the case."); In re Fricker, 131 B.R. 932, 937-38 (Bankr. E.D. Pa. 1991) ("[T]his court has jurisdiction to determine the propriety of the compensation received by Counsel even though this case has been dismissed . . . . We view this matter, as any matter involving an award of fee to professionals, as intrinsically involved with the administration of a debtor's estate . . . ."); In re Lowe, 97 B.R. 547, 548-49 (Bankr. W.D. Mo. 1987) ("The court has the inescapable duty to determine the reasonableness of attorney's fees awards and to exact forfeitures in cases . . . in which the facts clearly demonstrate such forfeitures to be appropriate. This duty must be performed even after dismissal of the case. . . .") (citation omitted).
 
 
 25
 At least one court has gone even further and asserted that bankruptcy courts have exclusive jurisdiction to decide attor ney's fee issues because they constitute core proceedings. See Edgewater Sun Spot, Inc., v. Pennington & Haben, P.A. (In re Edgewater Sun Spot, Inc.), 183 B.R. 938, 943 (N.D. Fla. 1995), aff'd, 84 F.3d 438 (11th Cir. 1996). In reaching that conclusion, the court relied in part on a BAP opinion that affirmed the bankruptcy court's jurisdiction to sanction parties, even after a case had been dismissed. See Mangun v. Bartlett (In re Balboa Improvements, Ltd.), 99 B.R. 966, 970 (B.A.P. 9th Cir. 1989); see also In re French Bourekas, Inc., 183 B.R. 695, 696 (Bankr. S.D.N.Y. 1995), aff'd , 195 B.R. 19 (S.D.N.Y. 1996).
 
 
 26
 Thus, bankruptcy courts have recognized that fee issues, and control of the parties and their representatives, can be central to the proper conduct of bankruptcy proceedings. We expressed a similar view in a different context when we pointed out that regulation of the activities of parties before the bankruptcy court should be in the hands of that court alone. See MSR Explorations, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 915 (9th Cir. 1996). Bankruptcy courts surely have the most expertise and interest in controlling their own proceedings and in regulating the behavior of professionals who seek to appear before them or work on cases under their tutelage. It is those courts that help prevent distressed debtors, and their creditors, from becoming cheerless carrion for voracious vultures, who would pick the estate clean. In my opinion, there is a need for exclusivity and I would require it, but I need not even consider the farthest reaches of bankruptcy court jurisdiction over fees at this time.
 
 
 27
 At the very least, all of the above indicates that the bankruptcy court and the BAP were unduly concerned about the Supreme Court's decision in Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). The Supreme Court did refer to the fact that federal courts have limited jurisdiction. See id. at 377, 114 S. Ct. at 1675. It declared that a court does not automatically retain jurisdiction over settlement agreements, which lead to dismissal of cases before them. See id. at 378-82, 114 S. Ct. at 1676-77. But the Court did not undermine the doctrine of ancillary jurisdiction. Id. That doctrine clearly applies in this case. Kokkonen has no effect on the bankruptcy court's jurisdiction. Nor do I perceive that a bankruptcy court, which is considering a request for attorney's fees, would somehow exceed its authority if it denied the request for fees because the attorney's violations of his duties to the court militated in favor of setting those fees at zero.
 
 
 28
 I recognize, but at this point ascribe no particular significance to, the fact that Lisowski's demands, and prompting by the Superior Court, induced Elias to institute the attorney's fees proceeding in the first place. For purposes of this case I need not ruminate upon, or decide, whether that could make a difference. Here, Lisowski itself submitted that the bankruptcy court could decide the fee question and argued that the bankruptcy court could award fees to it, even if there had been a conflict of interest. Lisowski concluded by asserting that it "should be awarded full compensation for fees incurred." Thus, the firm itself placed the question of its compensation squarely before the court. The bankruptcy court did have jurisdiction to decide the motion regarding Lisowski's fees, without reopening the bankruptcy proceedings.
 
 
 29
 In fine, I agree with the majority and the BAP that the bankruptcy court could, and did, properly exercise its discretion when it refused to reopen the case for the purpose of setting aside an earlier order.However, there was no need to reopen the case in order to determine the amount of fees, if any, to which Lisowski was entitled for representing Elias as a debtor in the bankruptcy proceeding. Moreover, the bankruptcy court had jurisdiction to decide that issue.
 
 
 30
 Thus, in my opinion the bankruptcy court erred when it concluded that it did not have jurisdiction to decide Lisowski's fees. I express no opinion on whether Lisowski or Elias behaved in a picaresque manner, or was purblind, or negligent. I would, however, hold that the bankruptcy court did have jurisdiction to consider the fee issue and should have done so.
 
 
 31
 Therefore, I concur in part, but respectfully dissent in part.
 
 
 
 Notes:
 
 
 [1]
 The specific issues that the state court asked for advice on were: the viability of Lisowski's lien; the status of Lisowski as an employee of Elias in the bankruptcy case; and whether a preference claim against Lisowski would affect its ability to collect its fee.