**In re Shelly ELIAS, Debtor.**

**Shelly ELIAS, Appellant,**

**v.**

**LISOWSKI LAW FIRM, CHTD.; United States Trustee, Appellees.**

**BAP No. NV–95–2258–RMaMe.**
**Bankruptcy No. 94–20662–LBR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 20, 1997.

Decided Oct. 27, 1997.

Before: MARLAR,[1] RUSSELL, and MEYERS, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge:

After the debtor's chapter 11[2] case was dismissed, her bankruptcy attorney filed a state-court lawsuit against her for $10,000.00 of unpaid chapter 11 attorneys' fees. The debtor filed a motion for summary judgment in the state-court action, arguing that her former attorney was not entitled to any fees because he had secured his employment in the bankruptcy case fraudulently by failing to disclose his prior connection with the debtor, the fee he received for the bankruptcy retainer, or his receipt of a potential $3,000.00 preference from the debtor on the eve of filing.

Prior to ruling on the motion for summary judgment, the state court requested that the bankruptcy court rule upon the viability of the attorney's lien, the status of the attorney's employment in the bankruptcy case, and whether a preference claim against the attorney could affect his ability to collect a fee.

Pursuant to the state court's request, the debtor filed a motion in the bankruptcy court seeking to vacate the order authorizing counsel's employment, cancel the attorney's lien, and determine that counsel was not entitled to any fees.

Exercising its discretion, the bankruptcy court denied the debtor's motion. The bankruptcy court also found that it had no jurisdiction to enter further orders concerning the disputed fees. The debtor appealed. We AFFIRM.

## I. FACTS

Shelly Elias ("the Debtor") filed a voluntary chapter 11 proceeding on February 18, 1994. Her attorney, James F. Lisowski of the Lisowski Law Firm, Chtd., applied for

Robert A. Nerseian, Nerseian & Clark, Las Vegas, NV, for Appellant.

Elizabeth A. Stephens, Lisowski Law Firm, CHTD, Las Vegas, NV, for Lisowski Law Firm, Chtd.

1. The Honorable James M. Marlar, Bankruptcy Judge for the District of Arizona, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq. and to the Federal Rules of Bankruptcy Procedure.

retention as her attorney on February 28, 1994. The application stated that the Debtor had paid nothing as a retainer, and, further, that neither Lisowski nor his firm "have any connection with the Debtor, her creditors or any other party in interest . . . and represent no interest adverse to the Estate in the matters upon which [they are] to be retained." The application was supported by Lisowski's affidavit, wherein he repeated the statement that he did not represent or hold an adverse interest. An order appointing the firm was signed by the bankruptcy court on March 8, 1994.

In fact, for some time before the bankruptcy, Lisowski and his firm had represented the Debtor in connection with her cocktail lounge. Just prior to the bankruptcy filing, the Debtor owed the Lisowski firm $8,000.00. Knowing that he could not represent the Debtor in her chapter 11 proceeding while his firm was a creditor, Lisowski and the Debtor agreed that the debtor would pay $3,000.00 toward the $8,000.00 outstanding legal bill, and the $5,000.00 balance would be forgiven. The Debtor then paid an additional $4,200.00 for a bankruptcy fee, together with $800.00 to cover the cost of filing the chapter 11. It is unclear from the record, and immaterial to this opinion, whether the Debtor also paid an additional $500.00.

The payment of a $4,200.00 (or $4,700.00) attorneys' fee was inconsistent with Lisowski's representation that the firm was paid "–0–" for its services in filing the chapter 11. On March 22, 1994, the Debtor executed her Statement of Financial Affairs and noted, in question 9, that Lisowski had indeed been paid $4,200.00 on February 17, 1994.

The § 341 meeting of creditors was held on March 23, 1994, and the $3,000.00 preferential payment was raised and discussed by the U.S. Trustee's attorney. According to Lisowski, the U.S. Trustee's attorney indicated by a "shake of the head" that it was unnecessary for the Debtor to amend the Statement of Affairs and note that item in writing. The existence of this head nod is unsupported by the record, and counsel's reference to it is suspicious because the Statement of Affairs, question 3, *requires* disclosure of "all payments" aggregating more than $600.00 made within 90 days prior to commencement of the case. The Debtor never disclosed the $3,000.00 pre-petition payment to the Lisowski firm in writing, and the U.S. Trustee had no authority to waive the answer to that question.

The case proceeded through various stages for almost a year. In December 1994, the Debtor, through counsel, filed a motion to dismiss her case. Thereafter, the Debtor apparently had a falling out with the Lisowski firm and filed the actual order of dismissal herself, without consulting her attorneys. The case was dismissed on January 11, 1995. The Lisowski firm, up to and through dismissal, never moved to withdraw as counsel, and now maintains that the order dismissing the case was entered before its attorneys knew of the entry of the order dismissing the case.

All parties agree that, during the course of the chapter 11 proceeding and to the current date, Lisowski never applied for, nor was he awarded, fees by the bankruptcy court.

On April 14, 1995, Lisowski sued the Debtor in state court for his fees. In that proceeding, the state-court judge declined to rule unless and until the parties obtained a ruling from the bankruptcy court, in the dismissed chapter 11, concerning the propriety and amount of fees. Specifically, the state court requested that the parties refer the matter to the bankruptcy court "for consideration of the following issues in order to avoid conflicting results:

1. The viability of the attorney's lien held by Lisowski Law Firm, Chtd.

2. The status of Mr. Lisowski as an employee of his client, Shelly Elias, in the Bankruptcy action.

3. Could a preference claim against Mr. Lisowski affect his ability to collect his attorney's fees?"

Thereafter, new motions were filed in the bankruptcy court, seeking to disqualify the Lisowski firm and rescind the order of employment. On November 14, 1995, the trial court exercised its discretion and refused to act on the request, and, in addition, found that the bankruptcy court was without jurisdiction to resolve the state court's concerns.

The court then returned the parties to the state court, noting that it was "fully capable of adjusting the fees requested based upon the nature and extent of services rendered."

This appeal of the bankruptcy court's Order followed.

## II. STANDARD OF REVIEW

A bankruptcy court's decision regarding an application for the employment of a professional is reviewed for abuse of discretion. *First Interstate Bank of Nevada v. CIC Investment Corp. (In re CIC Investment Corp.)*, 175 B.R. 52 53 (9th Cir. BAP 1994). Similarly, a bankruptcy court's decision as to the proper amount of attorneys' fees to be awarded is reviewed for an abuse of discretion. *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 880 (9th Cir.1995) *cert. den.* —— U.S. ——, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996). Finally, "[a] bankruptcy court's decision to decline to exercise jurisdiction over related proceedings following dismissal of the underlying bankruptcy case is set aside only for abuse of discretion." *Davis v. C.G. Courington (In re Davis)*, 177 B.R. 907, 910–11 (9th Cir. BAP 1995) (citation omitted).

## III. DISCUSSION

### A. Jurisdiction

The first issue on appeal, is whether the bankruptcy court was correct in deciding that it was without jurisdiction to resolve post-dismissal disputes regarding the Debtor's bankruptcy attorneys' fees.

▋ Once a case has been dismissed, property of the debtor's estate [3] re-vests in the debtor, and, unless the court orders otherwise, certain types of transfers which might have been avoided in the bankruptcy are reinstated as if no bankruptcy had intervened. 11 U.S.C. § 349(b). *See also* H.R.Rep. No. 95–595, at 338 (1977) ("The basic purpose of § 349(b) is to undo the bankruptcy case, as far as practicable.") In finding that it had no jurisdiction, the trial court also is supported by Ninth Circuit decisions which hold that a trial court retains subject-matter jurisdiction to interpret orders entered prior to dismissal of the underlying case, but that it does not retain jurisdiction to grant new relief in a case that has been dismissed. *See Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir.1989); *Beneficial Trust Deeds v. Franklin (In re Franklin)*, 802 F.2d 324, 327 (9th Cir.1986). In *Taylor*, the Ninth Circuit observed that, in addition to interpreting orders entered prior to dismissal of the underlying bankruptcy case, a bankruptcy court has power to dispose of ancillary matters such as an application for an award of attorneys' fees for services rendered in connection with the underlying action. 884 F.2d at 481 (citing *U.S.A. Motel Corp. v. Danning (Matter of U.S.A. Motel Corp.)*, 521 F.2d 117 (9th Cir. 1975)). Thus, while it is possible that, under the right set of facts, a bankruptcy court has inherent power to determine compensation questions presented even after the case has been dismissed, such power does not extend to the granting of "new relief." In this case, the trial court correctly determined that the relief requested by the Debtor would have constituted "new relief" and was, therefore, beyond the bankruptcy court's jurisdiction.

Here, the Debtor's position that the bankruptcy court should invalidate her contract with Lisowski is based not upon the argument that Lisowski did not earn his fees during her bankruptcy case, but, rather, upon the assertion that he acted unethically in the representation. The bankruptcy court does have an interest in ensuring that attorneys appearing before it conduct themselves properly, and that interest can be vindicated through the initiation of disciplinary proceedings concerning an attorney's conduct and fitness to practice before the court. However, that interest does not extend so far as to grant the bankruptcy court jurisdiction to involve itself in a state-court dispute by launching an independent inquiry into an attorney's conduct during a now-dismissed bankruptcy case. Such an inquiry would not have any connection to the issues presented in the bankruptcy, would not affect the rights of any creditor, and would not serve any of the purposes underlying the bankruptcy code. In short, the bankruptcy court

---

**3.** An "estate" is created by the commencement of a bankruptcy case. 11 U.S.C. § 541(a).

would be granting the Debtor new relief that would serve no purpose in advancing the dismissed case.[4]

Furthermore, subsequent to the Ninth Circuit's rulings in *Taylor* and *Franklin*, the United States Supreme Court has determined that the scope of a federal court's residual jurisdiction in a dismissed case is quite limited. In *Kokkonen v. Guardian Life Insurance Co. of America*, the court held that "[i]t is to be presumed that a cause lies outside [a federal court's] limited jurisdiction." 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) (citation omitted). This presumption operates to deny a federal court jurisdiction even to enforce a court-approved agreement whereby a case in that same court was settled, unless the order approving the settlement agreement adopts the agreement's terms, the court expressly maintains jurisdiction over the agreement, or "there is some independent basis for federal jurisdiction." *Id.* at 381–82, 114 S.Ct. at 1677. In this case, there is no independent constitutional or statutory basis for the bankruptcy court to decide the ethical issues presented in this matter, or the impact of those issues upon the validity of the employment contract between the Debtor and Lisowski. Moreover, that matter currently is pending in a state court with full jurisdiction to resolve the contract issues before it.

Thus, even if the bankruptcy court were to have set aside the order of employment, it had no jurisdiction to order the additional relief requested. Accordingly, the bankruptcy court was jurisdictionally unable to decide the questions posed by the state court.

### B. Advisory Opinion

■ In addition to the jurisdictional grounds stated above, federal courts also are prohibited from rendering advisory opinions. *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *American State Bank v. Marks (In re MacNeil)*, 907 F.2d 903, 904 (9th

Cir.1990). In essence, because the issues upon which the state court requested guidance are immaterial to any matter in the dismissed bankruptcy case, an order of the bankruptcy court would merely be advice to the state court. For this reason, also, the bankruptcy court was correct in refusing to issue further orders in this matter.

### C. Discretion

■ Even if the bankruptcy court had the jurisdiction to consider the new motions, it properly exercised its discretion not to do so. Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed ... to accord relief to the debtor, or for other cause." The court's decision to reopen is entirely within its sound discretion, based upon the circumstances of each case. *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 540–41 (6th Cir.1985); *Citizens Bank & Trust Co. v. Case (Matter of Case)*, 937 F.2d 1014, 1018 (5th Cir.1991); *In re Rediker*, 25 B.R. 71, 73 (Bankr.M.D.Tenn.1982). Procedure requires that a motion be filed, something that was lacking in the instant case. Rule 5010, Federal Rules of Bankruptcy Procedure. One circuit has held that a bankruptcy court may reopen a case *sua sponte* if *prima facie* evidence discloses that an estate has not been administered fully. *See Mullendore v. United States (In re Mullendore)*, 741 F.2d 306, 308–09 (10th Cir.1984). However, this exception is narrow, and is not present here.

Thus, one must look to the known facts of this case, as disclosed by the record chosen by the parties, to consider whether the bankruptcy court abused its discretion in refusing to reopen the case and answer the questions posed by the state-court trial judge. As this court noted in *Kashani v. Fulton (In re Kashani)*,

[u]nder the abuse of discretion standard, the Ninth Circuit has clearly stated that

---

4. Moreover, the bankruptcy court is not the best forum in which to complain about the professional conduct of an attorney outside the context of any pending bankruptcy case; the state courts, and the appropriate state bar association, are better able to deal with such issues. Also, it

should be noted that the Debtor herself signed, under oath, the very Statement of Affairs which she now contends was erroneous and fraudulent, presumably because she, also, wanted to ensure that her attorney was appointed to represent her in the bankruptcy. See Part III(C), *infra*.

the trial court's exercise of its discretion will not be disturbed unless there is " 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' "

190 B.R. 875 (9th Cir. BAP 1995) (citing *Moneymaker v. CoBen (In re Eisen)*, 31 F.3d 1447, 1451 (9th Cir.1994) (internal citations omitted)).

Here, numerous factors supported the bankruptcy court's decision not to consider the fee issues further. They included that the case had been dismissed for over eight months; that there were no assets to administer; that all property had re-vested in the Debtor; that any potential preferences had been reinstated by the dismissal; that the Debtor herself had signed, under oath, the very Statement of Affairs which she contended was erroneous and fraudulent; that the state court was "fully capable of adjusting the fees requested based upon the nature and extent of services rendered;" and that "the state court may determine what sanctions are appropriate in determining the total fees, if any, which may be paid."

In effect, if we determine that the state court's request for advice requires the bankruptcy court to act, we are opening the door for any number of requests by parties who find themselves still fighting long after the bankruptcy case has been laid to rest. Because there no longer exists a bankruptcy case, no federal purpose is served by a retroactive, post-dismissal review of a state-court attorney-fee dispute. Had this matter been brought to the bankruptcy court's attention during the pendency of the bankruptcy case, it could have been decided, at the proper time and in the proper context, in that forum. Now, however, the matter properly is pending in another court which may decide issues that are clearly and fully within its jurisdiction, to wit, the propriety and amount of an attorney's fee, and the extent of an attorney's lien.

## IV. CONCLUSION

We are not satisfied either that the bankruptcy court had jurisdiction to grant the relief requested by the Debtor, or that there has been a showing that the bankruptcy court abused its discretion in refusing to reopen the dismissed case in order to review pending state-court issues concerning disputed attorneys' fees. We therefore AFFIRM the decision of the bankruptcy court.

RUSSELL, Bankruptcy Judge, dissenting:

I respectfully dissent.

I would REVERSE and REMAND with instructions that the bankruptcy court enter an order vacating the order of employment and deny the request for attorney's fees.

The following excerpts from the majority's opinion demonstrate that it does not share my concern regarding the serious impact of Lisowski's actions upon the integrity of the bankruptcy system:

Here, the Debtor's position that the bankruptcy court should invalidate her contract with Lisowski is based not upon the argument that Lisowski did not earn his fees during her bankruptcy case, but, rather, upon the assertion *that he acted unethically in the representation.* The bankruptcy court does have an interest in ensuring that attorneys appearing before it conduct themselves properly, and that interest can be vindicated through the initiation of disciplinary proceedings concerning an attorney's conduct and fitness to practice before the court. However, that interest does not extend so far as to grant the bankruptcy court jurisdiction to involve itself in a state-court dispute by launching an independent inquiry into an attorney's conduct during a now-dismissed bankruptcy case. Such an inquiry would not have any connection to the issues presented in the bankruptcy, would not affect the rights of any creditor, *and would not serve any of the purposes underlying the bankruptcy code.* In short, the bankruptcy court would be granting the Debtor new relief that would serve no purpose in advancing the dismissed case.[4]

. . . .

In this case, there is no independent constitutional or statutory basis for the bankruptcy court to decide the *ethical issues* presented in this matter, or the impact of

those issues upon the validity of the employment contract between the Debtor and Lisowski. Moreover, that matter currently is pending in a state court with full jurisdiction to resolve the contract issues before it.

(Emphasis added).

The majority concludes that we are merely dealing with "ethical issues" which have no impact on the bankruptcy system or this case. However, nothing could be further from the truth.

Although the egregious conduct of the debtor's attorney does involve ethical issues, his conduct impacted adversely on the integrity of the bankruptcy system. As will be discussed in more detail below, the disclosure requirements of the Bankruptcy Code and Rules are crucial to the proper operation of the bankruptcy system and go to the heart of its integrity.

In footnote 4, the majority adds insult to injury by implying that the debtor was a willing accomplice in Lisowski's egregious course of conduct:

> 4 Moreover, the bankruptcy court is not the best forum in which to complain about the professional conduct of an attorney outside the context of any pending bankruptcy case; the state courts, and the appropriate state bar association, are better able to deal with such issues. Also, it should be noted that the Debtor herself signed, under oath, the very Statement of Affairs which she now contends was erroneous and fraudulent, *presumably* because she, also, wanted to ensure that her attorney was appointed to represent her in the bankruptcy. See Part III(c), *infra*.

(Emphasis added).

Is the majority serious in suggesting that the debtor was aware of the full ramifications of the various omissions and false statements by her attorney? I hope not. To even suggest that the debtor knew what a preference was, or understood the intricacies and ramifications of what constitutes a "disinterested person," is unrealistic. To further suggest that the debtor paid the same attention to the accuracy of her attorney's representations to the court is equally unrealistic.

In short, although the debtor was aware of the past and present facts regarding her relationship with her attorney, to even suggest that she in some way is partially to blame for the egregious conduct of her attorney is at best unfortunate.

Finally, the majority's holding that the motion by the debtor to vacate the order authorizing Lisowski's employment and to determine that he was not entitled to further attorney's fees was asking for an "advisory opinion" is surprising. The relief requested by the motion, far from asking for a mere opinion of the bankruptcy court, was asking for very specific relief on matters presently at issue which go to the heart of the integrity of the bankruptcy system.

## I. STATEMENT OF FACTS

The debtor, Shelly Elias, filed a chapter 11 petition on February 18, 1994. She hired James F. Lisowski, Sr. of the Lisowski Law Firm, Chtd. ("Lisowski") to represent her in the bankruptcy case. Lisowski filed an application for an order authorizing the debtor to employ him. The order authorizing his employment was entered on March 9, 1994.

Within 90 days of the filing of the chapter 11 case, the debtor paid Lisowski $8,000. That sum consisted of $5,500 for representation in the chapter 11 case and $2,500 on account of an antecedent debt owed to Lisowski for his prior representation of the debtor in the acquisition and licensing of a saloon.

The employment application and Lisowski's related affidavit failed to disclose that he had any prior connection with the debtor. The application also stated that Lisowski had not been paid any monies as a general retainer for the bankruptcy representation.

Lisowski failed to disclose the $5,500 and $2,500 payments in the employment application, the debtor's schedules, and the statement of financial affairs. Lisowski's statement pursuant to Rule 2016(b) regarding compensation stated that he had received the sum of $4,200 from the debtor for legal services rendered in connection with the bankruptcy case and that $800 had been paid for the filing fee.

At the § 341(a) meeting of creditors held on March 23, 1994, the United States Trustee ("UST") reviewed the debtor's statement of

affairs with the debtor and Lisowski. Lisowski advised the UST that the $2,500 payment was not listed and offered to amend the schedules to reflect the payment. Lisowski subsequently alleged that the UST indicated by shaking his head that it would not be necessary to amend the schedules and statement of affairs to include the payment. Lisowski did not amend the schedules or statement of affairs at any time during the course of the bankruptcy case.

The UST asked Lisowski at the § 341(a) meeting whether the payment might constitute a preference. Lisowski responded in the negative, stating that the payment was received in a chapter 11, was substantially less than the actual amount owed, and that the debtor was solvent at the time of the payment. The UST concluded the § 341(a) meeting after completing his inquiry regarding the remainder of the information contained in the debtor's statement of affairs.

Lisowski's representation of the debtor in the case continued. Eventually, on November 21, 1994, Lisowski filed a motion on the debtor's behalf to dismiss the case. In the motion, Lisowski specifically stated that the debtor was current or had made arrangements to pay all §§ 503 and 507 administrative expenses incurred in the chapter 11 case, including fees owed to the UST. The bankruptcy court granted the motion to dismiss on December 21, 1994.

On January 11, 1995, an order of dismissal was submitted by the debtor *in propria persona*. Lisowski did not submit the order of dismissal apparently because the debtor refused to pay further attorney's fees to Lisowski. The court entered the debtor's order dismissing the chapter 11 case on January 12, 1995. No fee applications were ever filed in the case.

After the bankruptcy case was dismissed, Lisowski filed a lien against the debtor for unpaid attorney's fees incurred during the chapter 11 case. He also filed a complaint in the state court to collect those fees.

On May 9, 1995, debtor filed a motion in the state court action for summary judgment, contending that Lisowski was not entitled to collect any fees because he had secured his employment in the bankruptcy case by committing fraud upon the bankruptcy court. Debtor specifically contended that the fraud consisted of Lisowski's failure to disclose the $2,500 prepetition payment on the schedules and the statement of affairs as a potential preference, his incorrect representation in the employment application and supporting affidavit that the debtor had not paid Lisowski a general retainer, and his incorrect representation in the Rule 2016(b) disclosure statement of the amounts which the debtor had paid to him.

On November 1, 1995, following oral argument but prior to ruling on the summary judgment motion, the state court issued an order requesting that the matter be referred to the bankruptcy court for its consideration of the following issues: (1) the viability of the attorney's lien, (2) the status of the attorney's employment in the bankruptcy case, and (3) whether a preference claim against the attorney could affect his ability to collect his attorney's fees. The order explained that the state court did so in order to avoid conflicting results.

The debtor subsequently filed a motion in the bankruptcy court which requested the bankruptcy court to "dissolve," i.e., vacate, the order authorizing Lisowski's employment, to cancel and strike his attorney's lien, and for a determination that Lisowski was not entitled to any fees (the "motion to vacate").

The bankruptcy court conducted a hearing at which it considered the debtor's motion to vacate, Lisowski's written opposition, and heard oral argument and representations from all parties, including the UST.

After taking the matter under submission, the bankruptcy court entered an order on November 16, 1995 in which it denied the debtor's motion to vacate. The court found that Lisowski's failure to comply with the disclosure rules was a sanctionable violation, but stated that the state court could determine what sanctions, if any, might be appropriate. The bankruptcy court further held that it did not have jurisdiction to order the remaining relief requested, namely, to cancel the attorney's lien and to determine that

Lisowski was not entitled to any fees, The debtor appealed.

## II. ISSUES

A. Whether the bankruptcy court abused its discretion in denying the debtor's motion to vacate the order authorizing the employment of the debtor's counsel.

B. Whether the bankruptcy court improperly declined to exercise jurisdiction over the debtor's request to cancel the attorney's lien and to disallow counsel's fees.

## III. DISCUSSION

A. *Whether The Bankruptcy Court Abused Its Discretion In Denying The Debtor's Motion To Vacate The Order Authorizing The Employment Of Debtor's Counsel*

The disclosure requirements imposed by the Code and the Rules upon attorneys who

1. Rule 2014 provides in pertinent part:
   **Rule 2014. Employment of Professional Persons.**
   (a) **Application for and Order of Employment.** An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connection with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

2. Section 327 provides in pertinent part:
   **§ 327. Employment of professional persons**
   (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accoun-

seek to represent debtors and who seek to recover fees are intended to ensure that counsel's representation is in the best interests of the estate. *In re Park–Helena Corp.,* 63 F.3d 877, 880 (9th Cir.1995), *cert. denied sub. nom Neben & Starrett, Inc. v. Chartwell Fin. Corp.* — U.S. ——, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996). The obligations imposed upon counsel by the disclosure rules are independent of all other requirements. *Id.*

Rule 2014(a) [1] requires that an attorney's application for employment disclose "all of [counsel's] connections with the debtor, creditors, or any other party in interest...." The requirement is intended to assist the court in its determination that the attorney has no conflicts of interest, as required by § 327(a), [2] and that the attorney is "disinterested" as defined in § 101(14) [3]

Employment of an attorney who is not disinterested has been held to be void *ab initio. In re EWC, Inc.,* 138 B.R. 276, 281

tants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

3. Section 101 provides in pertinent part:
   **§ 101. Definitions**
   In this title—
   ....
   (14) "disinterested person" means person that—
   (a) is not a creditor, an equity security holder, or an insider;
   (B) is not and was not an investment banker for any outstanding security of the debtor;
   (C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;
   (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
   (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

(Bankr.W.D.Okla.1992). Further, counsel's disclosure duties are considered to be continuing and result in the ongoing jurisdiction of the bankruptcy court to disqualify persons with a conflict of interest. Id. (citing *In re Estes*, 57 B.R. 158, 161 (Bankr.N.D.Ala.1986); *In re Roberts*, 75 B.R. 402, 407 (D.Utah 1987); *In re Amdura Corp.*, 121 B.R. 862, 869 (Bankr.D.Colo.1990)).

Section 329 [4] and Rule 2016(b) [5] require that every attorney for a debtor must file a statement disclosing the compensation paid or promised to the attorney, whether or not the attorney ever applies for compensation in the case.

An attorney's failure to comply with the disclosure requirements of the Code and Rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Code provision or any Rule. *Park–Helena Corp.*,' 63 F.3d at 880; *In re Film Ventures Intern., Inc.*, 75 B.R. 250, 252 (9th Cir. BAP 1987). The disclosure rules are applied literally despite the sometimes harsh results which may occur, and negligent or inadvertent omissions do not obviate the need for disclosure. *Park–Helena Corp.*, 63 F.3d at 881.

The consequences of an attorney's violation of the disclosure requirements regarding applications for employment may include the setting aside, or vacating, of the order authorizing counsel's employment, *EWC. Inc.*, 138 B.R. at 285, a denial of all fees, *Park–Helena Corp.*, 63 F.3d at 882, or disgorgement of fees already received, *EWC Inc.*, 138 B.R. at

285. The consequences for an attorney's non-disclosure regarding fees similarly include denial of all fees requested, *Park–Helena Corp.*, 63 F.3d at 880, or disgorgement of fees already received, *EWC, Inc.*, 138 B.R. at 285.

1. *Counsel's failure to disclose prior connections with the debtor violated the disclosure requirements of the Code and Rules*

Lisowski's application for an order authorizing debtor in possession to employ attorneys under a general retainer denied that Lisowski or his firm had any prior connection with the debtor:

7. To the best of applicant's knowledge, the members of the LISOWSKI LAW FIRM do not have any connection with the Debtor, her creditors or any other party in interest, or their respective attorneys or accountants, and represent no interest adverse to the Estate in the matters upon which it is to be retained.

Likewise, Lisowski's affidavit in support of the employment application stated:

3. Neither I, the LISOWSKI LAW FIRM, nor any member or associate thereof, insofar as I have been able to ascertain, represents any interest adverse to that of the Debtor, the estate, or the Debtor, the Debtor's creditors or any other party in interest in the matters upon which said law firm is to be engaged.

---

4. Section 329 provides in pertinent part:

§ 329. **Debtor's transactions with attorneys**

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

5. Rule 2016 provides in pertinent part:

Rule 2016. **Compensation for Services Rendered and Reimbursement of Expenses.**

. . . .

(b) **Disclosure of Compensation Paid or Promised to Attorney for Debtor.** Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

4. Based on the foregoing, I believe the LISOWSKI LAW FIRM is a "disinterested person" within the meaning of Sections 101(13), 327 of the Bankruptcy Code.

Despite these assertions, it is uncontroverted that Lisowski was the debtor's attorney and advisor dating back to at least 1992 in connection with her acquisition and licensure of a saloon in Nevada known as the Hyde Park Lounge. Lisowski does not dispute that he represented the debtor repeatedly prior to the bankruptcy filing. He also does not dispute that the debtor had an outstanding balance of approximately $8,000 owed to him, and amounts owed to other firms, at the time of the bankruptcy filing.

Lisowski nonetheless asserts that he had no prior connection with the debtor. At the hearing on the motion to vacate, the following colloquy between the court and Lisowski concerning his prior connections with the debtor occurred:

THE COURT: Mr. Lisowski.

MR. LISOWSKI: Your honor, I think the Court has to look at the totality of what really happened in this case.

Ms. Elias first contacted me in May of 1993 about filing a bankruptcy petition due to the fact that she couldn't pay her bills; this included numerous attorney's fees to my firm and to other firms. Finally, Your Honor, on—just prior to February 18th it was determined that she needed to file a Chapter 11 because she was about to have an increase in payments to Hyde Park Liquor, Inc., her secured creditor. At that time I informed Ms. Elias that I could not represent her if she had any type of outstanding balance to my firm because we would not [be] a disinterested party.

Through discussions with her it was suggested that the bill be discounted, or that a percentage of the fee be paid. And she did in fact pay three thousand dollars to that bill; that's what we're talking about.

. . . .

THE COURT: Now why was your application—why did your application not correctly reflect—

MR. LISOWSKI: Honestly, Your Honor, I think it was just a mistake on our part to not put it in. And I didn't realize it until I reviewed the petition for the 341, which is my standard practice. I realized it wasn't on the petition.

THE COURT: I'm talking about the application to employ.

MR. LISOWSKI: As far as the application to employ goes, Your Honor?

THE COURT: Yeah.

MR. LISOWSKI: Listing that she had paid three thousand?

THE COURT: Well, it said you had no connection—

MR. LISOWSKI: I did not, Your Honor. At the time we filed the petition she didn't owe me any money.

THE COURT: No, no, no, no, no. You say in your application for employment

MR. LISOWSKI: Mm-hmm.

THE COURT:—that you have no connection with the debtor. Now, I take "no connection" to mean that you'd never represented her.

MR. LISOWSKI: That's not true, Your Honor; I had represented her repeatedly.

THE COURT: I understand that's what really happened.

MR. LISOWSKI: Yeah.

THE COURT: My point is, why didn't the application not say that.

MR. LISOWSKI: I don't know, Your Honor; I had represented her repeatedly prior to this time, and there was no secret about that. And I mean I had represented her in the acquisition of this bar, I had represented her in getting her license. It was—

THE COURT: Your application says, "to the best of their knowledge, the members do not have any connection with the debtor"—

MR. LISOWSKI: *You see, Your Honor, I take "connection with the debtor" to mean I'm not an insider, I am not in business with her, I do not own a percentage of her bar, I don't split fees with her; and that's what I take [as] "connection." And I had no connection with her in any way, shape*

*or form, Your Honor; she was just a client.*

(Emphasis added).

Lisowski's explanation of his understanding of the definition of "no connection" is nothing short of astounding. In the employment application, Lisowski represented that he and his law firm have "experience and knowledge in the field of bankruptcy, insolvency and debtors' and creditors' rights" and that the debtor consequently believed them to be "well qualified to represent her in the Chapter 11 reorganization case." It is inconceivable that a knowledgeable, experienced bankruptcy attorney could have such a fundamental lack of understanding of the definition of "no connection." It is equally inconceivable that an experienced bankruptcy attorney would provide such an explanation to the court if in fact he knew full well that the plain meaning of the term "no connection" means precisely that, i.e., no connection whatsoever including representation of "just a client."

Lisowski indisputably had significant prior connections with the debtor and failed to disclose those connections in his employment application. It is immaterial whether the non-disclosure was the result of Lisowski's innocent ignorance of the Law or an intentional effort on his part to be disingenuous. *See Park–Helena Corp.,* 63 F.3d at 881. Under either scenario, non-disclosure of the prior connection with the debtor was a clear violation of the requirements of § 327(a) and Rule 2014(b).

2. *Counsel's failure to disclose prepetition payments from the debtor also violated the disclosure requirements of the Code and Rules*

The record reflects that the debtor paid Lisowski $2,500 on February 14, 1994 (four days before filing bankruptcy) and $5,500 on February 17, 1994. The bankruptcy case was filed on February 18, 1994. The debtor contends that the $2,500 was paid on account of the antecedent debt owed to Lisowski for his prior representation of her in the non-

6. Lisowski asserted during the proceedings below that $3,000 was received on account of the antecedent debt. Lisowski admits on appeal that

bankruptcy matters described above, and that the $5,500 payment was a retainer for the bankruptcy representation.[6]

Lisowski acknowledges that the debtor owed him approximately $8,000 at the time the bankruptcy case was filed, and that he agreed to accept $2,500 as payment in full for the outstanding debt.

Lisowski was required under Rule 2014(a) to disclose the $5,500 retainer in his employment application. Lisowski's application, however, states that he received no retainer:

5. It is necessary and essential that the Debtor employ these attorney[s] under a general retainer based on time and standard billable charges. A general retainer is necessary because of the extensive legal services required for this estate. A general retainer has been paid by Debtor in the amount of $ –0–.

Item no. 3(a) of the statement of affairs requires that the debtor list all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within 90 days immediately preceding the commencement of the case. Neither of the payments Lisowski received are listed on the statement of affairs in response to item no. 3(a).

Lisowski does not deny that he failed to disclose the payments. He contends, however, that he raised the issue of the omissions with the UST at the § 341(a) meeting "unilaterally" and "sua sponte" and offered to amend the schedules and statement of affairs. He further contends that by a "shake" or a "nod" of the head, the UST told him that he did not need to amend the schedules and statement of affairs to reflect the payments.

The transcript of the § 341(a) meeting revealed that the UST meticulously questioned the debtor and Lisowski about the information contained in the schedules and statement of affairs on an item by item basis. The transcript reflects that Lisowski did not mention his omission of the payments until

the amount paid for the antecedent debt was in fact $2,500 and not $3,000.

the UST's inquiry regarding item no. 3(a) was imminent:

MR. JENKINS: Okay, on the statement of financial affairs Item 1 for 1993, you show a negative income of $18,000, but on your tax returns, you show a negative income of $65,000.

MR. LISOWSKI: At the time, we were estimating. We filed the schedule. She just, actually, received the return back as she mentioned, today.

MR. JENKINS: Okay.

MR. LISOWSKI: We can amend. I—you know, we—the accountant had given that figure to me is what he could tell from the cash flow.

MR. JENKINS: Okay. No. That won't be necessary. I'm just curious.

MR. LISOWSKI: That's what her statement show. Her year-end statement for the bar showed that.

MR. JENKINS: Okay. Item 2 of the statement of financial affairs shows $11,000 income in 1993 other than from the Hyde Park Lounge. What was that in?

MS. ELIAS: That was my rental. From August to, you know, the—

MR. JENKINS: Okay.

*MR. LISOWSKI: Mr. Jenkins, can I point out an omission on No, 3?*

*MR. JENKINS; Yes,*

*MR. LISOWSKI: No. 3 for the creditors on 3(a). Okay? My office received and I will amend the schedules to reflect this. My office received $3.000 [7] from Ms. Elias, approximately, a week before filing this compromised bill. I will amend to do that. It was intention—not intentionally—unintentionally omitted on the schedules.*

MR. JENKINS: Is that going to create a problem as far as any preference?

MR. LISOWSKI: I don't believe so. First of all, it's an 11.

MR. JENKINS: Yes.

MR. LISOWSKI: Secondly, it was substantially less than what the value was. And the third thing as we've repeated all along, she's not insolvent.

MR. JENKINS: Yes. Referring to Item 10 of the statement of financial affairs .... [at which point the UST began questioning the debtor regarding item no. 10, entitled "Other Transfers."]

(Emphasis added).

A close reading of the transcript does not support Lisowski's contentions that the UST, either verbally or nonverbally by a "shake of the head," advised Lisowski that he did not need to amend the schedules and statement of affairs to reflect the payments. The UST stated that it would not be necessary to amend the debtor's response to item no. 1 on the statement of affairs. The UST said nothing whatsoever concerning amendment of the response to item no. 3(a). Lisowski did not amend the schedules or statement of affairs at any time during the course of the case. It appears that Lisowski acknowledged the payments only when he realized the UST was about to ask detailed questions about item no. 3(a).

I agree with the debtor that it is not possible to read into the exchange quoted above any kind of head motion by the UST which would indicate that an amendment of the documents would not be necessary. In any case, the obligation to disclose the payments cannot be waived by the UST. It is an obligation owed to the creditors and particularly to the court.

Lisowski's claim that his failure to disclose the payments was an unintentional mistake and was "inadvertent" is highly questionable. Even if it were, a bankruptcy court may deny all fees where the debtor's attorney unintentionally fails to disclose potential preference payments received from the debtor. *Park–Helena Corp.,* 63 F.3d at 881; *see also In re American Thrift & Loan Ass'n,* 137 B.R. 381,:389 (Bankr.S.D.Cal.1992).

In *American Thrift & Loan,* the bankruptcy court held that attorney's fees should be denied where the attorney had failed to disclose in the application for employment that he or she had received potential preference payments from the debtor. *Id.* at 390. The bankruptcy court further explained that it

---

7. *See supra* note 6.

would have denied the application for employment if the attorney had fully disclosed all connections with the debtor. *Id.* at 389.

### 3. *Counsel's emphasis on whether the payments were in fact preferences was misplaced*

Lisowski's arguments concerning the propriety of his non-disclosure focused on the issue of whether the $2,500 payment constituted a preference under § 547.[8] He repeatedly contended it could not.

Specifically, when questioned by the UST whether receipt of the payment could constitute a preference, Lisowski explained that it could not because a preference cannot exist until after full resolution of a preference action brought by the debtor in possession in the context of an adversary proceeding. He further explained that the payment could not be a preference because it was a chapter 11 case, was substantially less than the actual value owed, and the debtor was solvent.[9]

It appears based on these arguments that Lisowski is stating he did not disclose the payment because he believed disclosure was not warranted, rather than because the non-disclosure was inadvertent.[10] Further, nowhere has Lisowski attempted to explain why he did not amend the schedules or statement of affairs to notify the court of his receipt of the potentially preferential payment, other than his contention that the UST advised him by a nonverbal "shake of the head" that he need not do so.

As a result of these arguments, the analysis in the proceedings below focused on the issue of whether Lisowski was in fact a creditor of the debtor who could or should have been pursued for recovery of a preferential transfer. In its order denying the motion to vacate, the court stated:

> Mr. Lisowski was not a creditor at the time of the filing of the petition, hence he was not per se disqualified on those grounds. [Citation omitted].
>
> The receipt of a preference is avoidable, not void, and debtors have discretion to pursue or not to pursue preferences. 11 U.S.C. § 547. Moreover, it is not apparent that Mr. Lisowski received more than he would have received in a liquidation. Whether or not the receipt of funds constitutes an interest which is "materially adverse" is not relevant after the case is dismissed, as 11 U.S.C. § 349 provides any preferences recovered are reinstated after dismissal.

I believe this analysis missed the mark. The correct analysis is whether a potentially preferential payment occurred and whether Lisowski made full disclosure of his receipt of that payment. I believe the court was led astray by Lisowski's arguments concerning the significance of whether the payment was in fact a preference, as opposed to whether a potentially preferential payment had occurred and full disclosure of that payment had been made.

Finally, it should be noted that item no. 3(a) of the statement of affairs does not require a list of all preferential payments made within 90 days of bankruptcy. Rather, it simply requests disclosure of all payments made within that time period. In failing to

---

8. Section 547 provides in pertinent part:

   **§ 547. Preferences**

   . . . .

   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

      (1) to or for the benefit of a creditor;

      (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

      (3) made while the debtor was insolvent;

      (4) made—

      (A) on or within 90 days before the date of the filing of the petition; or

      (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

      (5) that enables such creditor to receive more than such creditor would receive if—

      (A) the case were a case under chapter 7 of this title;

      (B) the transfer had not been made; and

      (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

9. Of these arguments, only the issue of solvency is possibly relevant to a preference analysis.

10. This contradicts his statements elsewhere in the record that the non-disclosure was inadvertent.

disclose the $2,500 prepetition payment in the statement of affairs and in the employment application, Lisowski prevented the court from having highly relevant information before it.

### 4. *Lack of actual harm caused by the failure to disclose is not determinative*

A disclosure violation may result in sanctions regardless of the actual harm to the estate. *Park–Helena Corp.*, 63 F.3d at 881 (citing *In re Maui 14K, Ltd.*, 133 B.R. 657, 660 (Bankr.D.Haw.1991)). A lack of harm to the estate does not obviate the fact of non-disclosure and does not alter the resulting consequences of disqualification or denial of compensation. *EWC, Inc.*, 138 B.R. at 284.

In explaining its exercise of discretion to deny the motion to vacate, the court stated:

[T]he court notes that no fees are being sought or were sought from the estate, no creditor is being harmed, there is no evidence that the failure to disclose or the alleged conflict of interest in any way harmed the debtor and, finally, dismissal was sought at the instance of the debtor and not any creditor.

The bankruptcy court's analysis again missed the point. The debtor's counsel stated the issue correctly at the hearing on the motion to vacate, as follows:

[T]he question is not the harm to the debtor; it's not even the harm to the estate. It is the harm to the process of authorizing attorneys to undertake representation that is proscribed by statute and proscribed by the disciplinary rules that attorneys all work under. That—it's pretty clear, in fact repeatedly in the cases cited to this Court the cases state that there was a benefit to the estate, not a detriment, a benefit; and even with that benefit the

fees would be denied because the disclosures were not forthcoming or the attorney was not disinterested. In the case at bar we have both Judge, we have an attorney who was not disinterested and was absolutely statutorily barred and we have an attorney who failed to make the appropriate disclosures to the Court.

Counsel's repeated non-disclosures undermined the integrity of the judicial process. On these facts, the bankruptcy court's denial of the motion to vacate the order authorizing counsel's employment constituted an abuse of discretion. I believe that its decision must be reversed and the matter remanded with instructions that the bankruptcy court enter an order vacating the order of employment.

### B. *Whether The Bankruptcy Court Improperly Declined To Exercise Jurisdiction Over The Debtor's Request To Cancel The Attorney's Lien And To Disallow Counsel's Fees*

Because the bankruptcy court erred in failing to vacate the employment order, the debtor's counsel was never properly employed by the debtor and is not entitled to any fees for the representation of the debtor in this case. There is accordingly no basis upon which the state court could decide that he is entitled to payment of fees as the debtor's counsel.[11] *See In re Weibel*, 176 B.R. 209, 211–12 (9th Cir. BAP 1994) (holding that compensation to professionals acting on behalf of an estate must be based on provisions of the Code, which does not provide for fee awards based on state law theories such as *quantum meruit*).

In view of the above, there is no need to address whether the bankruptcy court had jurisdiction to order the remaining relief re-

---

**11.** On this issue, I note that counsel may be precluded by the doctrine of judicial estoppel from asserting in the state court action a position which is inconsistent with his position earlier in the bankruptcy court case. In his motion to dismiss the bankruptcy case, counsel stated:

7. The Debtor is current or has made arrangements to pay all 11 U.S.C. S § 503 and 507 expenses including fees owed to the United States Trustee.

This statement is in direct conflict with his contention in the state court action that he is

entitled to collect $11,000 from the debtor on account of unpaid chapter 11 attorney's fees.

I believe, based on counsel's egregious conduct throughout the case, that the inconsistent positions reflect the type of "cynical gamesmanship" which the doctrine of judicial estoppel is intended to prevent. *See Teledyne Industries, Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir.1990); *Forty–Eight Insulations, Inc. v. Aetna Cas. & Sur. Co.*, 162 B.R. 143, 147 (N.D.Ill.1993).

quested. However, given the significant extent to which the majority has addressed the issue of jurisdiction, I feel compelled to provide the following response to their discussion.

The bankruptcy court had jurisdiction to cancel Lisowski's attorney's lien or disallow his fees. Sections 327 [12] and 328(c) [13] govern the determination of the propriety of professionals' fees arising during the course of a bankruptcy case. Bankruptcy courts retain subject matter jurisdiction over the award of attorney fees even after the dismissal of the underlying case. *In re Brickell Inv. Corp.,* 171 B.R. 149, 156 (S.D.Fla.1994) ("Fees are such an essential item to the bankruptcy court's core of jurisdiction that the court can, and must, consider same, even after dismissal of the case."); *In re Fricker,* 131 B.R. 932, 937–38 (Bankr.E.D.Pa.1991) (bankruptcy court "has jurisdiction to determine the propriety of the compensation received by Counsel even though this case has been dismissed.... "); *Matter of Lowe,* 97 B.R. 547, 548 (Bankr.W.D.Mo.1987) ("The court has the inescapable duty to determine the reasonableness of attorney's fees awards ... This duty must be performed even after the dismissal of the case."); *see also Post v. Ewing,* 119 B.R. 566, 568–69 (S.D.Ohio 1989) (a bankruptcy court which had dismissed a chapter 11 case properly retained jurisdiction after dismissal to order counsel to return fee to debtors).

Attorneys for debtors in possession are officers of the court. The fairness of their fees reflects upon the integrity of the court. It follows that, the court can and must exercise jurisdiction over fee awards, even after dismissal of the underlying bankruptcy. *In re Shirley,* 134 B.R. 940, 945 (9th Cir. BAP 1992) ("The Code sections and Rules covering the dealings between the debtor and the debtor's attorney are 'premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor and his attorney to protect ... the debtor against overreaching by an officer of the court .... ' ") (quoting from *In re Wood,* 210 U.S. 246, 253, 28 S.Ct. 621, 624–25, 52 L.Ed. 1046 (1908)); *see also Matter of Lowe,* 97 B.R. at 548 n. 4 ("Attorney's fees awards, by reason of the attorneys' being officers of the court and subject to the court's disciplinary powers, continue to be *in custodia legis* even after the termination of a case in which they have been awarded or collected.")

Indeed, the bankruptcy court has exclusive jurisdiction over the determination of debtor's attorney's fees: "The determination of fees of an agent of the estate is a core proceeding within the exclusive jurisdiction of the Bankruptcy Court." *In re Edgewater Sun Spot, Inc.,* 183 B.R. 938, 943 (N.D.Fla. 1995), *aff'd sub. nom Edgewater Sun v. Pennington & Haben,* 84 F.3d 438 (11th Cir. 1996), *cert denied sub. nom Edgewater Sun Spot, Inc. v. Pennington & Haben, P.A.,* ——— U.S. ———, 117 S.Ct. 303, 136 L.Ed.2d 220 (1996). Moreover, the Ninth Circuit has ruled that the bankruptcy court has exclusive jurisdiction over claims of misconduct on the part of debtors' attorneys. In *In re Balboa Improvements, Ltd.,* 99 B.R. 966 (9th Cir. BAP 1989), the BAP held that:

> Jurisdiction over a claim of misconduct by the debtor's attorney in the administration of an estate may be analogized to the exclusive jurisdiction over similar claims against a court-appointed trustee or debtor-in-possession. It is well settled that such fiduciary cannot be sued in state court without leave of the bankruptcy court for acts done in his official capacity and within his authority as an officer of the court.

*Id.* at 970.

In the present situation, if the bankruptcy court were to disallow Lisowski's fees, such

---

**12.** *See supra* note 2.

**13.** Section 328 provides in pertinent part:

> **328. Limitation on compensation of professional persons**
> ....
> (c) Except as provided in section 327(c), and 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

disallowance would act as a sanction for his misconduct. Thus, for the court to decide whether Lisowski is entitled to his fees, it must consider exactly those "acts done in [the attorney's] official capacity and within his authority as an officer of the court." Nonetheless, Lisowski argues, and the majority agrees, that the bankruptcy court has no jurisdiction over the issue, whereas the state court does. The reverse is true: the bankruptcy court has jurisdiction which supersedes that of the state court.

Furthermore, the United States Supreme Court has ruled that a district court retains jurisdiction to issue Rule 11 sanctions even after the dismissal of the case. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409, 110 S.Ct. 2447, 2462–63, 110 L.Ed.2d 359 (1990). The same reasoning applies, and has been applied, to the bankruptcy court. "The voluntary dismissal" of a chapter 11 proceeding, "unquestionably a core proceeding, [does] not strip [the court] of jurisdiction to impose sanctions for conduct during the course of the case." *In re French Bourekas, Inc.*, 183 B.R. 695, 696 (Bankr.S.D.N.Y.1995), *aff'd,* 195 B.R. 19 (S.D.N.Y.1996). Because the disallowance of Lisowski's fees would act as a sanction for his attorney misconduct, the dismissal of the underlying bankruptcy does not strip the bankruptcy court of jurisdiction.

In the matter before us, the bankruptcy court held that even if it were to vacate the order authorizing Lisowski's employment, it had no jurisdiction to cancel his attorney's lien or disallow his fees. The bankruptcy court found the state court to be "fully capable of adjusting the fees requested based on the nature and extent of the services rendered." The bankruptcy court relied on *In re Hunter*, 66 F.3d 1002 (9th Cir.1995), and *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), in support of its position.

In *Hunter*, the Ninth Circuit held that the bankruptcy court could not hear an independent state law fraud claim after dismissal of the underlying case unless there was "some statutory or constitutional basis for its jurisdiction." *Hunter*, 66 F.3d at 1005. Since the parties in that case lacked diversity, and no constitutional or statutory authorization for

jurisdiction existed over the independent state law claim, the Ninth Circuit found that the bankruptcy court lacked subject matter jurisdiction. *Id.*

The Ninth Circuit relied upon *Kokkonen* in order to reach its decision in *Hunter.* In *Kokkonen*, the United States Supreme Court held that a federal court could not exercise subject matter jurisdiction over a state law breach of contract claim which arose from a case that had been previously dismissed pursuant to a settlement agreement, absent ancillary or an independent basis for jurisdiction. *Kokkonen*, 511 U.S. at 381–82, 114 S.Ct. at 1677.

*Kokkonen* and *Hunter*, however, solely concerned the issue of a federal court's subject matter jurisdiction over state law claims which were ancillary to the underlying lawsuits. The issue in this case, by contrast, concerns the propriety of legal fees incurred by a debtor's counsel during the course of a chapter 11 case in the federal bankruptcy court. *Hunter* and *Kokkonen* are inapplicable to this case, and the reliance of both the bankruptcy court and the majority upon these authorities was misplaced.

The majority relies on the Ninth Circuit cases of *In re Taylor*, 884 F.2d 478 (9th Cir.1989), and *In re Franklin*, 802 F.2d 324 (9th Cir.1986), in holding that the bankruptcy court does not have jurisdiction to disallow Lisowski's fees. It maintains that these cases stand for the proposition that trial courts retain subject matter jurisdiction to interpret prior orders, but that they cannot grant "new relief." The majority concludes that the bankruptcy court has no jurisdiction in the instant case because the debtor requests "new relief." This reasoning is misguided.

In *Taylor*, the Ninth Circuit held that after an entry of an order dismissing a Chapter 13 petition based on the debtor's failure to file a feasible plan, a bankruptcy court no longer had jurisdiction to grant a request for relief from stay arising in connection to the prior Chapter 13 petition:

> [T]he bankruptcy court retains subject matter jurisdiction to *interpret* orders entered prior to dismissal of the underlying

bankruptcy case [citations omitted] and to dispose of ancillary matters such as an application for an award of attorney's fees for services rendered in connection with the underlying action [citations omitted]. The bankruptcy court does not have jurisdiction, however, to grant new relief independent of its prior rulings once the underlying action has been dismissed.

*Taylor,* 884 F.2d at 481.

In *Franklin,* the Ninth Circuit held that the bankruptcy court had jurisdiction to determine the effect of the filing of a prior bankruptcy on a foreclosure. *Franklin,* 802 F.2d at 326 ("[B]ankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner."). Although Lisowski never filed an application for an award of attorney's fees, his entitlement to fees *is* based upon a bankruptcy court order, i.e., the order of employment. A debtor's attorney cannot receive fees without such an order: "Court approval of the employment of counsel for a debtor in possession is *sine qua non* to counsel getting paid." *In re Shirley,* 134 B.R. 940, 943 (9th Cir. BAP 1992). A trial court's decision to deny the attorney his fees is tantamount to a decision to revoke the order of employment. The decision to revoke the order of employment is nothing more than an interpretation of an order entered prior to dismissal. The present situation thus falls squarely within the ambit of jurisdiction as defined by *Taylor* and *Franklin.*

I believe the bankruptcy court therefore had jurisdiction, indeed exclusive jurisdiction, over the disallowance of Lisowski's fees.

## V. CONCLUSION

The debtor's counsel affirmatively stated in his application for employment and the affidavit in support of that application that he had no prior connection with the debtor. The record reflects, however, that counsel had represented the debtor for several years prior to the bankruptcy filing and was owed a significant sum at the time of the bankruptcy filing for legal services rendered in connection with non-bankruptcy related matters.

Counsel's explanation for the non-disclosure defied belief. Counsel failed to disclose a significant, extensive prior connection with the debtor and the non-disclosure of the prior connection constituted a clear violation of the disclosure requirements of the Code and Rules.

Counsel also failed to disclose his receipt from the debtor of a general retainer and a payment on account of the antecedent debt for non-bankruptcy legal services. Counsel's justification for the non-disclosure was legally irrelevant and misled the bankruptcy court from the relevant inquiry in the case. Counsel's non-disclosure of the prepetition payments from the debtor similarly constituted a clear violation of the disclosure requirements of the Code and Rules.

The facts of this case are extraordinary and counsel's conduct egregious. Under the totality of the circumstances, the bankruptcy court's denial of the debtor's motion to vacate counsel's employment was an abuse of discretion. Thus, counsel is not entitled to the fees sought in the state court action.

Finally, the bankruptcy court relied, as does the majority, on inappropriate legal authorities in declining to exercise jurisdiction over the issue of disallowance of counsel's fees. The bankruptcy court has jurisdiction over the issue and should have considered the matter on the merits. Its decision not to do so was an abuse of discretion.

I would REVERSE and REMAND with instructions that the bankruptcy court enter an order vacating the order of employment and deny the request for attorney's fees.